PEARCE ET AL.
*vs.*
FRANTUM.

PEARCE ET AL. *VS.* FRANTUM.

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, FOR THE PARISH
OF RAPIDES, THE JUDGE OF THE SEVENTH PRESIDING.

In an action to recover the rents and profits in a separate suit after eviction, and the defendant pleads in compensation and reconvention, of the plaintiffs' demand, the enhanced value of the land of which he was evicted, he cannot afterwards avail himself of the plea of *res judicata.*

Under the Civil Code of 1808, the party evicted, who was even in good faith, was bound to restore the fruits which he reaped, after the demand or institution of suit.

Where a party has been in peaceable possession of land without title, in the hope of getting a pre-emption right, he will not be liable to account for the rents and profits previously to the inception of the suit evicting him.

The right of a party evicted to be paid the value of his improvements, rests on the broad principles of equity, that no man ought to enrich himself at the expense of another.

In regard to the right of being reimbursed for useful improvements and expenses put on land, by which the property has been made more valuable to the owner, the code or law makes little or no distinction between a possessor in good or bad faith. But the sum to be repaid, can in no case exceed the increased value of the property.

This is an action to recover, from the defendant, damages for the fruits, rents and profits of 400 arpents of land, which it is alleged he occupied, used and possessed, without title, from the year 1818, until the year 1833, when he was finally evicted from the land, by a decision of the Supreme Court. See case of *Brown* vs. *Frantum, 6 Louisiana Reports,* 39.

The plaintiffs allege, that the defendant took illegal possession of said tract of land without shadow of title, and constantly kept the possession until evicted; that in 1821, the husband of one of the present plaintiffs (Brown,) instituted suit for the recovery of the land, but that no damages were claimed, or if claimed, it was expressly understood and agreed

that they should be waived, and reserved for a future action
after the question of title should be settled.

They allege that the defendant, notwithstanding he had no title and was fully notified, and had full knowledge of their claim and title, unjustly withheld the land, and kept them out of possession, to their damage fifteen thousand dollars. That he has had the use of the land from 1818 to 1833, and made large crops thereon, worth fifteen thousand dollars, and which they claim as the just value for the use of the land, and for which they pray judgment.

The defendant pleaded a general denial, and admitted his eviction from the land in question, but averred that he was formerly in possession, and possessed in good faith, and with a conscientious belief that it was honestly his property, and that this was his firm belief up to the hour of eviction. That he cleared on the land which was recovered from him, one hundred and fifty acres of a heavy forest, thereby rendering the same very valuable; and spent the most vigorous years of his life in making improvements, which are worth thirty dollars per acre for the cleared land, and erected a gin and dwelling house thereon, worth one thousand dollars; for all of which the plaintiffs are bound to pay and allow him for. He sets up a demand for the value of his improvements in reconvention, amounting to five thousand five hundred dollars, for which he prays judgment, and that the plaintiffs' demand be rejected.

He also pleaded *res judicata* that all the matters now in contest were decided and finally passed upon in the suit evicting him from the land.

Upon these pleadings and issues, the cause was tried.

The witnessess stated there were about one hundred and fifty acres of land cleared, and a very ordinary dwelling house, gin house, and some few negro cabins, worth about five hundred dollars.

The evidence showed that the father of the defendant settled on the land in question, in 1811 or 1812, when it was uncultivated. In 1821, the father having died, the whole of the improvements he had made, and on which he resided,

were sold at probate sale without warranty, and adjudicated to William Frantum, the son and present defendant, for two hundred and thirty-one dollars. In 1829, the defendant made a purchase from Baldwin, which was to include the *locus in quo.* The land when Frantum, the father, settled on it, was supposed to belong to the United States, and the Frantums believed they had a right of pre-emption to it. It turned out, however, to be part of an Indian claim, purchased up by Wells, Fulton and Miller. Wells sold to Brown in 1818.

Talbert, a witness for plaintiff, states he was present when Brown demanded the land from Frantum, and the latter replied, if Brown would let him have the use of the land for two years, he would give it up, which Brown refused. That Frantum admitted he had no legal title to the land, but said at the time, if the Indian claim failed, he would be entitled to a pre-emption right, &c.

Upon all the evidence, the district judge gave judgment, charging the defendant with the use of one hundred acres of
land for twelve years,                                $42 00  00
And for the balance of the land                         262  50

                                                       $4462  50
From which deduct the value of the buildings,           500  00

And it leaves a nett sum of                      ' $3962  50
for which judgment was rendered in favor of the plaintiffs. The defendant appealed.

*Winn,* for the plaintiff, contended that the defendant and his father before him, were possessors without the shadow of title, *in bad faith,* and owes rents and fruits, from the beginning of his possession, until his eviction and dispossession 7 *Martin, N. S.,* 110.

2. The law distinctly recognizes two sorts of possessors, first, those who possess honestly, and as master of the thing; and second, those who possess knavishly, (*de mauvaise foi,*) without any title, or with a knowledge that their title is

vicious. *Civil Code, p.* 478, *article* 21. In the first place, no
possessor can be truly master "whose possession is not accompanied by title." We do not contend that this must be good against all the world, but must necessarily be a title good upon its face, and not a mere naked possession, unaccompanied by any manner of title.

3. The evidence in the present case, shows that the defendant had no title, and that he knew he had no title, but on the contrary, that he had a knowledge of the plaintiffs' title, and which should have put a prudent man upon an investigation of the true character of his situation, which must have resulted in the knowledge of the confirmation of the Indian title by congress in 1816, and of the plaintiffs' ancestor, (Brown's) purchase in 1818. From this latter period, the defendant owes rents and profits, and being a possessor in bad faith, without title, he is not entitled to any compensation for his improvements.

*Elgee,* for the defendant, adverted to the suit of Brown against Frantum, the present defendant, in which he was evicted of the land from which this case arises, after a hard contest, decided ultimately by this court in 1833. It is evident, from this suit, that Frantum possessed the land under a very strong title, and one which he might well consider as good and valid. This made him a possessor in good faith, and entitled him to the fruits and revenues until the eviction, and to be paid for his improvements.

*Downes,* on the same side, contended that the judgment should be reversed, and the case remanded for a new trial, because the record did not show at what time the plaintiffs' demand for the fruits and revenues of the land commenced; for it is not enough to show that the defendant is liable to pay. It must be shown that the plaintiffs' right to claim the rents and profits began at a particular time.

2. It is shown from the evidence, the title under which he held and possessed, that the defendant was a possessor in good faith. This being the case, he owes no fruits or reve-

WESTERN DIST.  nues, until the judgment of eviction.  *Civil Code, article* 7,
October, 1840.  p. 102; 1 *Martin, N. S.,* 297; 2 *Idem.,* 559; 5 *Idem.,* 53; 7
PEARCE ET AL.  *Idem.,* 376, 653; 8 *Idem.,* 181, 609; *Louisiana Code,* 695, 3416.
vs.
FRANTUM.  3. The defendant is at all events entitled to be paid for all
the permanent improvements put on the land. 9 *Martin,* 349.
8 *Martin N. S.,* 620; 2 *Louisiana Reports,* 174; 3 *Idem.,* 543;
*Louisiana Code,* 500; *Civil Code,* 102,. *article* 7.

4. The testimony of Talbert, is not sufficient to show bad
faith.  One witness cannot establish a claim, or prove an
obligation over five hundred dollars, *Louisiana Code,* 2257.
Proof of the declarations or admissions of defendant is the
weakest kind of evidence, and if they were made in error, or
induced by fraud, or for the purpose of buying his peace, they
can have no effect.  1 *Louisiana Reports,* 286; 9 *Idem.,* 139;
*Louisiana Code,* 1887, 1890, 1818–19;  *Code Napoleon,* 532;
2 *Starkie,* 38, *and notes.*

5. This testimony fixes no time, either by itself or reference
to other parts of the evidence, when this possession or bad
faith commenced.  Even if it proves bad faith, when did that
commence?  It has no reference to any particular period and
is wholly indefinite.

6. He further insisted, that the plea of *res judicata* was
well taken, and ought to be sustained. *Code of Practice,* 902,
345; 1 *Louisiana Reports,* 315; 6 *Idem.,* 457; 7 *Martin, N. S.,*
430; 8 *Idem.,* 282.

*Bullard J.,* delivered the opinion of the court.

This case grows out of that of Brown *vs.* Frantum, decided
by this court in October, 1833, between the same parties (see
6 *Louisiana Reports,* 39.) It is substantially a suit to recover
the rents and profits, or fruits of the tract of land, then in con-
troversy, from the inception of that suit; the plaintiff alleges
that it was expressly agreed, that the question was reserved
for future adjustment, and not litigated in that case.

The attention of this court is first drawn to a plea of *res
judicata,* filed for the first time on the appeal.  Admitting
that the exception does not come too late, yet, it appears to us,
it ought not to avail the appellant. Not only did he in effect

waive it below by permitting evidence to be given that the question was by agreement of parties expressly reserved, but in his answer in this case, he seeks to recover in reconvention, or in compensation of the rents and profits demanded of him, the enhanced value of the land of which he was evicted, arising from the improvements made by him. He is thereby, in our opinion, precluded by his own acts and allegations, from availing himself of the exception.

The District Court gave judgment for the plaintiff, for the rents and profits from the date of the demand in the first case, deducting five hundred dollars for the value of a gin and dwelling house left on the premises; and the defendant appealed.

We have listened to much argument (and the case has indeed been ably argued,) upon the question, how far the good faith of the defendant, exempts him from the obligation to pay for the fruits of the thing pending the action. We cannot consider the question an open one. The old Code, in force at the time the first suit was instituted, has established a positive rule on this subject, which was recognized by this court, in the case of *Daquin et al.* vs. *Cairon et al.*, 8 *Martin*, *N. S.*, 620. By *article* 30, *page* 480, the party evicted, who was even in good faith, is bound to restore the fruits which he reaped after the demand.

But the plaintiffs seek to recover the rents and profits from the year 1818, three years before the judicial demand, and as relates to their right to recover for that period of time, and the right of the defendant to be paid for his improvements other than buildings left upon the premises, the good or bad faith of the defendant may well be considered. Two questions therefore remain for our consideration. 1st. Whether the defendant be liable for the rents and profits before the inception of the first suit, and 2d, whether he be entitled to the value of the improvements, and to what extent ?

I. It appears by the evidence that the plaintiffs never had been in possession of the tract of land; on the contrary, the father of the present defendant settled on it as early as 1811, and made a considerable clearing. It is not shown precisely

WESTERN.DIST.
October, 1840.

PEARCE ET AL.
vs.
FRANTUM.

In an action to recover the rents and profits in a seperate suit after eviction, and the defendant pleads in compensation and reconvention, of the plaintiffs' demand, the enhanced value of the land of which he was evicted, he cannot afterwards avail himself of the plea of res judicata.
Under the Civil Code of 1808, the party evicted, who was even in good faith, was bound to restore the fruits which he reaped, after the demand or institution of suit.

at what time he died, but in 1821, before the institution of the first suit, the improvement of the elder Frantum was sold at probate sale, and the defendant became the purchaser, and continued to reside on it, to extend the clearing and improvements, and so remained until 1833, after the final decision in the Supreme Court. In the year 1818, the father applied to the land office to obtain a preference in becoming the purchaser under the pre-emption law of 1814. At the time of the eviction, there were about one hundred and fifty acres of the land cleared, and an ordinary gin, dwelling house, and cabins upon it.

We are by no means prepared to admit that a settler upon unoccupied land, who redeems it from a state of nature by his industry, in the hope that, under the liberal legislation of congress, he may afterwards be entitled to a right of pre-emption, is to be regarded as a knavish possessor, by one whose title was uncertain at the time of the settlement, and that he is to account for the produce of the soil, to a person who, afterwards, on the completion of his title, prosecutes his claim against the possessor. The ultimate fate of the Indian title, was then a matter of doubt and uncertainty. The settler was not disturbed by the claimants under the purchase. If that claim had been ultimately rejected by congress, the settlers would have been unquestionably entitled to the right of pre-emption. The possession alone (says the Code of 1808,) after one year, even in the person of an usurper, if it has been peaceable and uninterrupted, suffices to make him to be considered as a just possessor, and even as master, until the true owner makes out his right. *Old Code*, 487.

Where a party has been in peaceable possession of land without title, in the hope of getting a pre-emption right, he will not be liable to account for the rents and profits previously to the inception of the suit evicting him.

But it has been urged that the testimony of Mr. Talbert proves conclusively that the defendant was in bad faith, because he knew he had no title. The witness states that he was present when Brown demanded the land of Frantum, but it does not appear how long before the suit was brought. He offered to give it up if Brown would let him have the use of it for two years. Frantum admitted he had no legal title to the land, but if the Indian claim failed, he would get a pre-emption. It is probable this demand was made shortly

WESTERN DIST.

October, 1840.

PEARCE ET AL.
vs.
FRANTUM.

before the suit was brought, for Brown acquired the land by purchase in 1818, and after refusing to permit Frantum to remain two years on the land, as a compensation for his improvements, it is not probable he would allow him to remain long without seeking to enforce his rights. But we do not think such evidence sufficient to entitle the plaintiffs to recover the fruits previously to the inception of the suit.

2. The right of the defendant to be paid for the improvements, by which the value of the premises was enhanced, depends upon other provisions of the law. It rests on the broad principle of equity, that no man ought to enrich himself at the expense of another. If, instead of recovering four hundred arpents of waste land, covered with heavy timber, the plaintiffs succeed in establishing their title to that quantity, of which one hundred and fifty is ready for the plough, together with the convenience of a dwelling and a gin, the result of the industry of his adversary, he cannot justly resist the latter's claim for renumeration. If the party evicted be entitled to be paid for edifices erected on the premises, of which the successful party takes possession, no plausible reason can be perceived why he should lose the lasting conquest his industry has achieved over the forest. If, in the administartion of justice, doubts have sometimes arisen, as to the application of this great principle to cases like the present, those doubts may have arisen in part from the peculiar expressions of our Code. The compilers of that digest copied the language of the Code Napoleon, which in many cases, was wholly inapplicable to the circumstances of a new country. In treating upon this subject, the Code of 1808 says, "if the *plantations*, edifices or works may have been done by a third person evicted, but not sentenced to make restitution of the fruits, because said person possessed *bona fide*, the owner shall not have a right to demand the suppression of said works, *plantations* or edifices, but he shall have his choice, either to reimburse the value of the materials and the price of workmanship, or to reimburse a sum equal to the enhanced value of the soil. *Page* 104, *article* 12. The wood *plantation*, which means in France, nothing more than planting out trees, must be taken here to

*The right of a party evicted to be paid the value of his improvements, rests on the broad principles of equity, that no man ought to enrich himself at the expense of another.*

PEARCE ET AL.
*vs.*
FRANTUM.

In regard to the right of being reimbursed for useful improvements and expenses put on land, by which the property has been made more valuable to the owner, the code or law makes little or no distinction between a possessor in good or bad faith. But the sum to be repaid, can in no case exceed the increased value of the property.

imply any permanent improvement of the soil, and especially the cutting down of trees, and fitting the land for the purposes of agriculture.

In respect to the right to be reimbursed for useful expenses, by which the property has been made more valuable to the owner, the Code makes little or no distinction between the possessor in good or in bad faith. It would seem that the sum to be reimbursed, can in no case exceed the increased value of the property. "*Cette obligation,* says Pothier, *ne naît que de cette règle d'équité, qui ne permet pas que quelqu'un s'en richisse aux dépens d'autrui; suivant cette règle, le propriétaire ne doit pas profiter aux dépends de ce possesseur de l'impense, que ce possesseur a faite, mais il n'en profite qu'antant que la chose se trouve augmentée de valeur par cette impense; il ne doit, donc être obligé à le rembourser que jusqu'à cette concurrence, quand même le possesseur aurait déboursé d'avantage.*" *Pothier domaine de pro. No.* 346; 8 *Martin, N. S.* 609; 2 *Louisiana Reports,* 174; 3 *Idem.,* 543.

The defendant became purchaser at probate sale, of the improvement made by his father, and was thereby subrogated to all the rights which his previous occupancy, cultivation and improvements conferred. If the land had turned out to be public, he would have been entitled to the right of preemption, and is entitled, in our opinion, to the value of the improvement, or the cost of the clearing, so far as it has enriched the plaintiffs by enhancing the value of the land. A part of the improvements was made by himself after his purchase.

Assuming the amount of rents and profits, as settled by the District Court, to be four thousand four hundred and sixty-two dollars and fifty cents, and allowing in compensation the clearing of one hundred and fifty-five acres, at twenty-five dollars, the least estimate according to the maxim *in dubiis id quod minimum est sequimur*; and five hundred dollars for the gin and dwelling, as estimated by the District Court, there results a balance in favor of the plaintiffs, of eighty-seven dollars and fifty cents.

It is, therefore, adjudged and decreed, that the judgment of the District Court be avoided and reversed; and it is further adjudged and decreed, that the plaintiffs recover of the defendant eighty-seven dollars and fifty cents, with costs in the District Court, those of the appeal to be paid by the plaintiffs and appellees.