3r 283
46 77

SUCCESSION OF WILLIAM FRANTUM—JOHN M. FENNER, Administrator, Appellant.

The acknowledgment and payment by tutors, curators, and executors, of debts due from the estates administered by them, are *prima facie* evidence of their correctness. When, from the extravagance of the charges, the unnecessary character of the supplies, or from any other circumstance, bad faith or dishonesty may be presumed, courts cannot be too strict ; but where there is every appearance of good faith and correct management, such fiduciaries should not be held, in the settlement of their accounts. to the strictest rules of evidence. Were they obliged to prove the signatures to every receipt, the cost of the attendance of witnesses or of their depositions, would involve the estates in heavy and unnecessary expense.

Full commissions of two and a half per cent on the productive property, may be allowed to an administrator, though the whole estate has not been fully administered by him.

APPEAL from the Court of Probates of Ouachita, *Lamy*, J.

GARLAND, J. The record shows that on the seventh of January, 1840, William Frantum died, and that shortly afterwards his widow was confirmed in the tutorship of their children, and appointed

administratrix of the estate.   Her brother, James L. Fenner, as-
sisted her as a relative, and as an agent, in the administration,
until her death, which occurred on the twenty-third of October
following.   Shortly after this period, James L. Fenner was ap-
pointed administrator of the estate of William Frantum deceased,
and of that of Ann E. Frantum the administratrix, she having died
without rendering any account of her administration.   J. L. Fen-
ner was also appointed tutor of the children, nine in number.   He
took them from the plantation to his own residence in the town of
Monroe, where the evidence shows that he treated them with great
kindness, and was educating them, and supplying all their wants, in
a manner suitable to their condition in life.   He also administered
the estates of the deceased persons, which consisted principally
of a plantation and slaves, until his death, in the month of January,
1842.   In his will, he named Margaret Ann Fenner as his execu-
trix, and she took upon herself the execution of the trust.

In March, 1842, the executrix presented an account of the ad-
ministration of the estate of Frantum previous to the death of Ann
E. Frantum, and as afterwards administered by James L. Fenner.
She presents the whole in one account, alleging it is not in her
power to separate the accounts of the two administrators, as Fen-
ner was the agent of Ann E. Frantum, and, after her death, con-
tinued the administration as though there had been no change or
new appointment.   In this account, she, in the first place, states
the amount of the inventory of Frantum's estate, made after the
death of Ann E. Frantum, which was the largest of the two.
In this inventory, there was included an amount in cash, a portion
of the crop of cotton of 1839, and that of 1840, which made up the
aggregate of the whole succession.   The property in the inventory
was returned in kind, but the cotton having been sent to market
and sold, a separate account of it was stated, showing the amount
at which it was appraised, and the amount of the proceeds of
the sale.   For the latter sum, the estate of James L. Fenner held
itself responsible.   These proceeds, consisting of the cash inclu-
ded in the inventory, with a small amount deposited in bank, and
the sums collected from Nettles and Holmes, made a sum of
$13,846 93.   The executrix then charges the estate with a variety
of sums, paid during the administration of A. E. Frantum and

during that of J. L. Fenner, for debts due by the succession, supplies for the plantation, and board, clothing, and necessaries for the minors, as well as for their education. An attorney's fee is charged, for advice and attention to the interests of the estate, and for services in making out the accounts; and also two and a half per cent commission on the inventory.

John M. Fenner, who succeeded James L. Fenner as administrator of the estate and as tutor of the children, was called on to show cause why the account should not be approved, and a balance of $2962 81, which appeared to be due to the estate of James L. Fenner, ordered to be paid by him. He appeared, and filed an opposition, objecting to about fifty items out of an account composed of nearly one hundred. A number of these items were objected to, simply on the ground that they were paid by A. E. Frantum during her administration, but their validity is not put at issue. Another objection comprised items, for which there were no vouchers. A third class of items were objected to because the bills were made out in the name of J. L. Fenner, or of a steamboat captain, without denying that the articles mentioned in them were used on the plantation, or by the children. Fees paid to different lawyers, employed during the lifetime of Frantum, and since his death, are the subject of the fourth objection. The expense for the board, education, and clothing of the nine minor children, from the death of their mother to the time of the appointment of the opponent as their tutor, and articles purchased for them, form the fifth class of items objected to. Finally, the charge of two and a half per cent for commissions as administrator, is objected to, as being illegal.

On the trial, it appeared that, from the time of the death of Ann E. Frantum, to that of the appointment of the opponent, James L. Fenner had the children at his house, that he provided for them all the necessaries of life, and such other things as were proper. He was proceeding to give them such an education, as the facilities offered by his near residence to respectable schools afforded, and was disposed to enable them to acquire such accomplishments as the ample fortune left by their parents entitled them to expect. In short, to use the language of a witness, "the children were well treated, as much so, as if they were Fenner's own." It appears

also, that James L. Fenner was in the habit, during the time that the children were with him, of getting such supplies of provisions from the plantation belonging to the minors, as it afforded. It was also shown, that a number of the articles mentioned in the different bills from New Orleans and elsewhere, were used on the plantation or in the family. Except in a few cases, there has been no evidence offered of the signatures to the different accounts and receipts, but we see no articles mentioned in those objected to, but such as might very reasonably be wanted on a plantation, or for the use of a family of children. The charges are for pork, flour, sugar, coffee, cotton-bagging, rope, plantation utensils, &c.; for coats, hats, shoes, articles of female apparel, the freight bills of steamboats, and the like. There is nothing in the accounts to excite a suspicion of unfairness, and the opponent has raised none by any evidence which he has offered.

The Probate Judge seems to have scrutinized the account rendered by M. A. Fenner, with great care, and reduced the balance claimed to $2102 67, reserving to her the right of showing, at a future time, her right to two items of $100 each, but rejecting them in this proceeding, as well as every item not sustained by a voucher or other evidence. From the judgment decreeing the payment of the balance of $2102 67, with interest of five per cent per annum, the opponent has appealed ; and in this court the appellee has prayed for an amendment of the judgment, by allowing $100 more paid to Isaac Thomas, as a fee in the suit of *Brown* v. *Frantum.*

In 2 Mart. N. S. 298, the account of an executor, accompanied by the vouchers in support of it, was held to be *prima facie* evidence of its correctness. In 6 Mart. N. S. 335, it was said that, " the acknowledgment and payment of debts by tutors and curators, which they know to be owing by the estate which they administer, may be considered as *prima facie* evidence of their correctness." We think these principles are reasonable and just ; and, if no presumptions of bad faith or dishonesty are raised, they should have their proper effect. When any thing of that kind is presented to rebut the *prima facie* evidence, such as extravagant charges, the purchase of articles or supplies not probably needed, or concealment of the funds, or any thing of the kind, courts can-

not be too vigilant and strict in their investigations and judgments; but where there is every appearance of good faith and correct management, executors, administrators, tutors, and other fiduciaries, ought not, in the settlement of their accounts, to be held to the strictest rules of evidence. It cannot be expected that they can always have witnesses to their various transactions, and were they obliged to prove the signature to every receipt for debts paid, supplies purchased, or other matters, the expense of summoning witnesses and of their attendance, the taking of depositions and procuring testimony generally, would involve successions and the property of minors, in heavy, and oftentimes unnecessary expenses.

As to the class of credits which appear to have been paid by Ann E. Frantum during her administration, we think that the judge did not err in retaining them in the account. No objection is made to their correctness, but it is contended that as she paid them, J. L. Fenner should not have a credit for them in this account. This would be true, if Fenner's executrix did not also offer to account and actually account for what A. E. Frantum received during her administration. The opponent, therefore, has no right to reject the sums paid by A. E. Frantum, unless he is willing to strike out the sums she has collected, which the executrix assumes and renders an account of.

The items in the account which were unsupported by vouchers, were disallowed by the Probate Judge, except those for the board, education, and necessary attention to the minors, and the commissions. These were proved by parol evidence, which disposes of the second objection.

The objection to the third class of items, was, that the bills were not made out in the name of Frantum's estate, nor the words administrator or tutor affixed to the name of Fenner, either in them or in the receipts, and that, in two or three instances, bills were offered as vouchers, which were for the purchase of articles in New Orleans, and made out in the name of steamboat captains, trading on the Ouachita river. Some of the articles in the latter class of accounts, are flour, molasses, boys' clothing, and household furniture; and in the former are charges for a horse which is shown to be on the plantation, for work on the gin and other buildings, and for such articles as would, probably, be necessary

on a plantation, or in a family.  It is not denied that the articles were necessary, nor that they were used.  If the opponent was of opinion that any thing incorrect was intended, or that the articles were not received and used, it would have been easy for him o say so, and have given the executrix notice of what she was requiredto prove.  We do not think that the judge erred, in admitting as many of this description of vouchers, as he did.

The fourth objection is to allowing fees to different lawyers, for services rendered to Frantum previous to his death, and to his succession since that time.  The fee to J. K. Elgee was allowed on proof of the admission of A. E. Frantum, that he had been employed ; but that paid to Thomas was rejected, as the opponent alleged that it was prescribed.  The fee claimed by him, is for · services rendered in the case of *Brown* v. *Frantum*, and it was paid in, or subsequent to the month of October, 1840, and that suit was not finally decided until the October term of this court in that year.  16 La. 414.  6 Ib. 39.  The opponent has not shown that the services of Thomas ceased previous to the termination of the case, and that being so, there is no prescription.  The judge, therefore, erred, in not allowing a credit for the amount paid to him.  As to the fee allowed to the attorney of the late representatives of the estate, it does not appear to us extravagant, if tested by the decision of this court recently made in the case of *Copley* v. *Harrison and Wife*, ante, p. 83.

The fifth objection is to a variety of items for the board, education, clothing, and attention to the minors, and for clothes for the slaves on the plantation, from October, 1840, to January, 1842.  There were nine minors at Fenner's, and upwards of fifty slaves on the plantation making large crops of cotton.  The price charged for articles the most necessary, such as shoes, coats, blankets, &c., are objected to, because it is not shown, to adopt the language of the opposition, where the articles *went to*, which we suppose means, that it was not proved what particular dress or pair of slippers was worn by one of the young ladies, what pairs of shoes were worn by the boys, or which slave had a blanket or a pair of brogans.  A piano purchased for the use of a daughter of the deceased, is most strongly objected to.  The judge reduced the claim for boarding the children about one-third, and rejected or reduced other

charges. We think, considering the circumstances of the minors, that the claims under this head are not extravagant, and that the judge was right in not reducing them lower than he did. Civ. Code, art. 343.

The question of commissions on the whole productive property, as shown by the inventory and evidence, is especially contested. It will be remembered that James L. Fenner acted in the double capacity of administrator and tutor; in the former, he was entitled to some commissions, and in the latter, the Code, article 342, fixes his commissions at ten per cent on the revenue, which is not claimed in this instance. We have before stated, that the account is rendered as if J. L. Fenner had administered the succession from the time of Frantum's death; and no commission had ever been charged by any one previously. All the mortuary proceedings had taken place; the property had been placed in such a situation as to secure it to the heirs; the plantation had been kept up and superintended; the debts due by the estate had been paid, and those owing to it in a great measure collected, so as to leave but little more to his successor than the care of the children and the necessary attention to the plantation. In the case of *Smith, Administrator*, v. *Cheney, Administratrix* (1 Robinson, 98), we allowed the first administrator a full commission, although it appeared that he had not fully administered the estate, but that he had administered much the greater part of it. If we were to give the commissions allowed by the article 342 of the Code to the tutor, it would not differ very widely from the sum claimed. We think, under the peculiar circumstances of this case, that the judge did not err in allowing that item of the account.

As to the claim for $1100, which it is stated that J. L. Fenner had borrowed of Ann E. Frantum, it is shown that the amount was taken out of the cash on hand at the time of Frantum's death, or out of the proceeds of the crop, the whole amount of which is accounted for in the account filed. We do not see the slightest ground for the claim of $4000 set up by the opponent. There was on hand, at Frantum's death, an amount exceeding $3000; but it is placed on the inventory, and an account thereof rendered.

The objections taken in the bill of exceptions, have been answered in the opinion expressed on the various points.

. The judgment of the Probate Court is hereby amended, by adding to it the sum of $100, the amount of Thomas' claim, which will make it $2202 57, with legal interest from the 27th July, 1842, until paid ; and the said judgment is in all other respects affirmed, with costs.

. *Copley*, for the appellant.

. *McGuire*, contra.