Hobson et al. vs. Peake.

## No. 10,993.

### J. B. HOBSON ET AL. VS. GLENN D. PEAKE.

1. Where a succession owes no debts and has been unconditionally accepted by the heirs, who are in actual possession of the estate through an agent duly authorized, an administration is unnecessary and illegal; and when such proceedings are carried on with the full knowledge of the agent of the absent heirs, who himself becomes a purchaser at a sale made therein, such a sale, so far as that purchaser himself is concerned, is a nullity so absolute that it could furnish, in his favor, no basis for any prescription save that of thirty years.

2. A proceeding in a personal action against absent defendants by substituted service through a curator *ad hoc* unaccompanied by any seizure of property is not " due process of law," and the judgment and sale thereunder are absolute nullities. The case is not affected by the fact that such a proceeding had been recognized as valid by prior decisions of this court, especially when, prior to the date of the proceeding, the Supreme Court of the United States had repeatedly condemned such proceedings as not " due process " under the Constitution of the United States.

3. An agent who has misconducted himself in the business of his agency, and who has engaged in illegal transactions by which he acquires interests adverse to those of his principals, and whose services, as a whole, have resulted in injury to his principals, can not, under a *quantum meruit,* claim compensation for his services.

4. Defendant ceased to be agent from the date of his purchases and became a possessor for his own account, and in bad faith. As such he is bound to account for the revenues, and is entitled to recover only his expenses necessary for the preservation of the property, such as taxes, and his useful improvements only to the extent to which they have enhanced the value of the property. Judgment in favor of plaintiffs for recovery of property, and case remanded for further proceedings as to counter claims between parties.

| | |
|---|---|
| 44 | 383 |
| 48 | 786 |
| 44 | 383 |
| 106 | 598 |
| 44 | 383 |
| 110 | 313 |
| 44 | 383 |
| 115 | 225 |
| 44 | 383 |
| 116 | 595 |
| 44 | 383 |
| 122 | 466 |
| 44 | 383 |
| f125 | 221 |
| f125 | 222 |

APPEAL from the Fifteenth District Court for the Parish of Pointe Coupée. *Semple, J.*

### O. O. & A. Provosty for Plaintiffs and Appellants:

1. The property of non-residents can not be divested by the contrivance of opening the succession of the person from whom they derive title by inheritance, and selling the property at succession sale. Where a succession owes no debt, and the heirs have accepted purely and simply, and are in possession through an agent, an administration is unnecessary and illegal; and a sale made in the course of it is an absolute nullity. 38 An. 716.

2. Where at such succession sale the agent himself becomes the purchaser, he is guilty of constructive fraud, which will furnish good grounds to annul his title in a suit instituted against him, by his principals, for that purpose. 42 An. 160.

3. His having instigated the null and void succession proceedings is proof conclusive of actual fraud.

4. Where a man undertakes, of his own accord, to manage the property of another, he incurs all the obligations that would result from an express agency. C. C. 2295.

5. It is now the settled jurisprudence that as against a non-resident, substituted service can be effectual as "due process of law," under the 14th amendment of the Constitution of the United States, only where, in connection therewith, property in the State is brought under the control of the court, and is subjected to its disposition by process adapted for that purpose. Laughlin vs. Ice Co., 35 An. 1184., Duruty vs. Duruty, 42 An.

6. The records of the District Courts of this State must speak for themslves, and can neither be contradicted nor eked out by parol evidence. 12 R. 531; 4 M. N. S. 176; 6 An. 700; 10 An. 700; 12 An. 349.

7. Citation, or that appearance of the defendant which will do away with the necessity of citation, can not be shown by parol after judgment, and so as to give validity to the judgment, but must appear from the record. 21. An. 27, 682; 1 Rob. 80. It is only in process posterior to judgment that corrections by parol are permissible. Same authorities, also 35 An. 101.

8. Where an agent is unfaithful to his trust, and abuses the confidence reposed in him by his principal, or where he misconducts himself in the business of the agency, he may be deprived of commission or compensation. Am. and Eng. Ency. of Law, Vo. Agency, Vol. 1, p. 397.

9. While mandate is not in its essence gratuitous, yet it is so in its nature; hence, in order to recover on a *quantum meruit*, the agent must repel this presumption of gratuity by proof of specific services, such as can not be supposed to have been rendered gratuitously. 36 An. 211; 21 An. 558.

10. A mandatary acting for himself, as well as for others, can not recover on a *quantum meruit.* 16 An. 155.

11. The action of an agent for the value of his services and his expenses incurred in the agency is prescribed by ten years; and the continuity of services does not interrupt the prescription where the duties of the agency have consisted in making an annual voyage to see about paying taxes, collecting rents and procuring tenants for one or more plantations. 35 An. 1012; 7 An. 222; 5 La. 15; 6 M. N. S. 228.

*Yoist & Claiborne* for Defendant and Appellee.

The opinion of the court was delivered by

FENNER, J.    Dr. Jesse Beaty, a resident of South Carolina, died before the war, leaving to his two brothers, Samuel Beaty and Robert Beaty, Sr., and to his two sisters, Patsy and Margaret A. Beaty, his property in the State of Louisiana, consisting of three plantations, known as West Oaks, in the parish of Iberville, and the McCrea and McKneely places, in the parish of Pointe Coupee. The heirs accepted his succession purely and simply and took possession of the estate through their duly appointed agent, Robert McBeth, who promptly came to Louisiana and sold the plantations for large prices, paid partly in cash and partly in mortgage notes with vendor's privilege.

After the war, the heirs sent the present defendant, Glenn D. Peake, as their agent to visit Louisiana and look after their mortgage claims. He came here, and, after collecting what he could, foreclosed the mortgages and obtained the retrocession of the Mc-Crea and McKneely places, with which we are alone concerned, to the heirs.

Samuel Beaty died in 1870; Patsy Beaty in 1872, and Margaret A. Beaty in 1885.

The plaintiffs in this suit are heirs of said Samuel, Patsy, and Margaret A Beaty, in certain proportions fully set out in their petition, and this is formally admitted in the record.

At the death of Samuel Beaty, his heirs accepted and took actual possession of his estate in Louisiana, through their agent, Glenn D. Peake, the defendant.

The defendant continued to act as the agent, with the broadest powers, of these plaintiffs and their ancestors, until the year 1882, at which date the results of his agency, according to his own showing, were summed up as follows: The West Oaks plantation, in the parish of Iberville, had been sold for more than $6000, and the proceeds, together with the revenues of all the property, amounting to about $2000, and also a further sum of $2900 collected in cash, had all been absorbed by the expenses of the agency; the defendant was the owner of the McCrea and McKneely places; the plaintiff heirs had not a cent's worth of property left in Louisiana, and were, besides, indebted to the defendant in a considerable balance for expenses of his agency.

The plaintiffs seem to have lived in ignorance of the details of these transactions until not long prior to the institution of this suit, when they employed an attorney to investigate them, and, as a result of the information thus obtained, they bring the present suit, in which they claim the nullity of the titles of Peake to their interests in the McCrea and McKneely plantations, together with an account of their rents and revenues.

Peake's title to one-fourth of the McCrea plantation, belonging to the heirs of Samuel Beaty, rests upon a sale made in a succession proceeding under the following undisputed circumstances:

Samuel Beaty died in 1867. His heirs had accepted his succession unconditionally and had taken actual possession of the property and held the same through their agent, the defendant. The succession

25*

owed no debts. Nevertheless, in 1874, the public administrator ap-plied for the administration of the succession of Samuel Beaty, sim-ply alleging his death, that his heirs were absent and unrepresented, that he owned land in the parish, and that an administration was necessary. Under this proceeding, an order of sale was obtained and the property was sold and adjudicated to Glenn D. Peake, the de-fendant.

The evidence shows that the public administrator acted with the full knowledge, if not at the suggestion, of Peake. Peake knew better than any one else that the succession of Samuel Beaty had been unconditionally accepted and was in the actual possession of the heirs; that the succesion owed no debts, and that the heirs, so far from being unrepresented in this State, were fully represented by him as their duly authorized agent then present in the State.

It seems superfluous to cite authorities to support the proposition that such a sale, in such a succession proceeding, to such a purchaser, is a nullity so absolute, so far, at least, as that purchaser himself is concerned, that it gave him no shadow of title, and could furnish, in his favor, no basis for any prescription short of thirty years.

The judge so held, and, beyond doubt, correctly.

The balance of the property claimed by plaintiffs is held by Peake under title derived from a judicial sale made under a judgment rendered in 1882 in a suit brought by Glenn D. Peake against the present plaintiffs and other heirs.

This suit was brought for a balance alleged to be due to him for his services and expenses as agent. Although Peake was a resident of South Carolina and a near neighbor of his principals, he came to Louisiana to bring this suit against them without giving them any notice thereof. It was a purely personal action. The defendants were all non-residents of the State. They were not cited, but were assumed to be brought into court through a curator ad hoc, who was appointed to represent them. They never appeared or answered. There was no attachment or other seizure of property before judg-ment.

Under the repeated adjudications, both of the Supreme Court of the United States and of this court, such a proceeding is not " due pro-cess of law," and the judgment and sale founded thereon are absolute nullities. Pennoyer vs. Neff, 95 U. S. 714; Harkness vs. Hyde, 98

U. S. 478; Brooklyn vs. Ins. Co., 99 U. S. 476; Laughlin vs. Ice Co., 35 An. 1184; Duruty vs. Duruty, 42 An. 357.

An attempt is made to charge plaintiffs with notice of this proceeding, and with an authorization of the curator *ad hoc* to represent them personally. The charge was not sustained by satisfactory evidence, and the evidence was, besides, improperly admitted, and was without avail to remedy the defect of citation or appearance as shown by the record. Harris vs. Alexander, 1 Rob. 30; LeBlanc vs. Perroux, 21 An. 27; Glidden vs. Goos, 21 An. 682; Babin vs. Nolan, 13 Rob. 531.

There was no citation except of the curator *ad hoc*, and no appearance by him except in the unqualified capacity of curator *ad hoc*, and his fee as such curator was taxed and paid as par of the costs. The record must speak for itself, and its radical defects prior to judgment can not be supplied or cured by parol. Adams vs. Bazile, 35 An. 101.

The judge *a quo* declined to annul this judgment on two grounds, viz: (1) that the suit partook of the nature of a proceeding *in rem*, for which ground there is not a shadow of foundation; (2) that the proceeding had been taken in conformity to prior jurisprudence of this State, which had recognized the validity of substituted service on non-residents who had property in the State without any seizure of the property itself. In this there is no force. Without intimating that it could avail under any circumstances, it is sufficient, for the purposes of this case, to say that the decisions of the Supreme Court of the United States in the cases above cited from 95th, 98th and 99th U. S. Reports had all been rendered years before this action was brought. Those decisions were based on the Constitution of the United States and involved questions purely federal in their nature, upon which the decisions of the federal Supreme Court were authoritative and paramount. On such questions the decisions of that court, and not of this, settle the jurisprudence and the law. When the same questions afterward came before this court we had nothing to do but to follow those paramount precedent.

It follows that this judgment and the sale thereunder must be decreed to be absolute nullities.

It remains to adjust the counter–claims between the parties for revenues, expenses, improvements, etc.

Defendant's claim on his agency account up to 1882, on which his

pretended suit in that year was brought, must be rejected. We need not determine the plea of its prescription, which presents questions not free from doubt, because, on its merits, the account gives rise to no just claim against these plaintiffs. That account shows cash collections by defendants amounting to nearly $11,000—far more than sufficient to pay all the necessary and useful expenses as recited in the account. The difference, for which the suit of 1882 was brought, is made up of $8000 charged for the agent's personal services over and above his expenses. This claim is based on no contract and must be determined according to the *quantum meruit*. When we consider the conduct of this agent with reference to the two judicial proceedings above referred to, his illegal and unwarrantable attempt to divest his principals of their property in his own favor, and the result of his services as exhibited in the summing up made at the beginning of this opinion, the question as to such services, *quantum meruunt?* can receive from a court of justice but one answer— *nihil.*

"Where an agent is unfaithful to his trust and abuses the confidence reposed in him by his principal, or where he misconducts himself in the business of his agency, or where he engages in transactions by which he requires interests adverse to the interests of his principals, he may be deprived of commission and compensation." 1 Am. and Eng. Encyc. of Law, p. 397, and numerous authorities there cited.

We have no desire to criticise the conduct of Mr. Peake with undue severity. He may have acted on bad advice; he may have satisfied himself of the propriety of his course; but the law condemns his conduct as utterly inconsistent with that *uberrima fides* which should characterize the relations of an agent to his absent principals.

From the date of his respective purchases Peake held the property, not as agent, but as possessor for his own account. We are bound to hold that he was a possessor in bad faith under C. C., Art. 3452, as one "who possesses as master, but who assumes this quality when he well knows that he has no title to the thing, or that his title is vicious and defective." Charged, as Peake is, with actual knowledge of the facts, and with conclusively presumed knowledge of the law, he was bound to know the nullity of his titles.

As possessor in bad faith he is bound to account for the revenues,

and is entitled to recover expenses necessary to the preservation of the thing, such as taxes, and also for useful improvements, but only to the extent to which they have enhanced the value of the prop‑ erty. These latter rights repose on no text of the Code, but on the great equitable principle which prevents one from enriching himself gratuitously at the expense of another. Pearce vs. Frantom, 16 La. 414; Baillio vs. Burney, 3 Rob. 319; Williams vs. Booker, 12 Rob. 254; Gibson vs. Hutchins, 12 An. 545.

All matters prior to 1882 were settled by our decision as to the agency account. Nothing remains but to determine (1) the amount of revenues from that date; (2) the taxes paid from that date; (3) the useful improvements and the extent to which they have actually enhanced the value of the property. These questions were not passed upon in the court below, and we have striven in vain to reach a satisfactory conclusion from the evidence in the record. That evidence does not define with exactness the date and character of the improvements made, and the defendant's answer does not even specify them; and the evidence is not directed to the only pertinent question, viz.: the enhancement of value.

We shall make our decree final as to the recovery of the property, but will remand the case for further proceedings with reference to the adjustment of the matters just referred to.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed; and it is now adjudged and decreed that the sale made in the succession of Sam‑ uel Beaty, and the judgment and sale in the suit of Glenn D. Peake vs. Margaret A. Young et al., be and they are hereby decreed to be null and void in so far as they affect the plaintiffs in this cause; that the said plaintiffs be decreed to be owners of the property described in the petition, and known as the McCrea place and the McKneely place, in the proportions in which they inherit the same from Samuel Beaty, Patsy Beaty and Margaret A. Young, as set forth in the peti‑ tion, and that Glenn D. Peake, defendant, be condemned to restore the same to plaintiffs; and it is further ordered this cause be re‑ manded to the lower court for further proceedings according to law for the determination of the rights of the parties as to rents, taxes and improvements according to the views expressed in this opinion, defendant to pay costs in both courts.