On Application eor Rehearing.
Miller, J.
The earnestness of the argument for a rehearing in this case has prompted us to a careful re-examination and, if our *1243 conclusions prove disappointing to the defendants, we trust they will be accepted as the result of a diligent effort on our part to give to the controversy, previous phases of which have been before us, our best attention.
"When defendants, sued for land, hold by different titles, they can not, as a general rule, be joined because their defences,, necessarily, are different. In this case the defendants exhibit no title whatever, common or individual. There is, it is true, on the part of some of the defendants the averment that they made homestead entries cf portions of the lands, but, in our view, such entries, even if sustained by proof, would not, under the circumstances of this case, distinguish the position of those who assert such entries from that of trespassers. Hence we have the case of plaintiff asserting title to a tract of land on which various persons have settled. The defendants are not distinguished by any difference in the titles they hold, for they hold none. They stand on one common ground of naked possession. We are aware of no rule or test by which plaintiff could divide his action. On the other hand, all these defendants have a common interest in disputing plaintiff’s title. If plaintiff had brought as many different suits as there are defendants, all could join in the defence, and to the consolidation of the suit there could be no objection. If consolidation to save costs would have been authorized, the propriety is enforced of joining all these defendants in one suit. We think, therefore, the exception of misjoinder is not well taken. Support of this view is to be found in the general rules of pleading and, we are inclined to believe, admits of abundant support in authority. We find one ease in point and those cited in plaintiff’s brief, to which we have not had access, seem to sustain the pleadings in this case. Derbes vs. Romero, 28 An. 644; 16 H. 288; 18 H. 263; 2 H. 642. In the cases of Gaines vs. City of New Orleans etals. the defendants, charged as possessors in bad faith, were joined in one bill, as we remember the cases. Gaines vs. Agnelly et als., 1 Woods, 238; Gaines el als. vs. City of New Orleans, 1 Woods, 104.
The defendants put at issue the corporate capacity of plaintiff. The Vicksburg, Shreveport & Texas Railroad Company was created in 1853 to construct a railroad from the Texas line to Vicksburg via Greenwood, Shreveport and Monroe. In aid of this railroad, or as the act expressed it “ a railroad,” between these points and the line stated, Congress granted in 1856 alternate odd sections of land for *1244 six sections in width on each side of the road. The grant stipulated the road should be constructed in ten years or the lands should revert to the United States. It is not disputed that the grant was accepted by the company, lands selected and the listing approved by the government, as provided by the Act of Congress of 1856. 11 Statutes at Large, 18.
Thereafter, in September, 1857, the company executed and issued bonds to a large amount, secured as usual in railway mortgages on its road-bed, lands and franchises, and the mortgage specially embraced the four hundred and twenty thousand nine hundred and twenty-four acres of land embraced in the grant. On these bonds, extant and unpaid in 1879, by appropriate proceedings in the United States Circuit Court, Fifth Circuit and District of Louisiana, the bondholders foreclosed their mortgage and at the master’s sale under the decree of the court acquired, through a committee selected by them, the railroad, its lands and franchises covered by mortgage.
We do not appreciate that any objection is or can be urged to these, proceedings. They exhibit the usual method by which railroad franchises are transferred when bondholders exact their rights.
It has never been supposed that such proceedings end the corporate existence, for, if this were the case, railroad mortgages would confer no rights and railroad bonds disappear as securities. It must be accepted, then, that the sale passed the corporate franchises, to the purchasers. In that condition the purchasers availed themselves of the Act No. 38 of the Legislature of 1877, which authorizes, the purchasers of railway property and franchises to hold all such property and operate the railroad the same as the company that executed the mortgage. The act further authorizes the purchasers to fix and divide the stock bought, adopt a name and organize anew the company by electing a board of directors. When all this was effected the act provided for the filing of the organization certificate in the office of the Secretary of State, and, this done, the act declares the company shall be deemed a body corporate under the name chosen as fully as if chartered anew by the Legislature. We find from the record that all these ■ provisions were complied with by the purchasers, and the corporation once known as the Vicksburg, Shreveport & Texas Railroad Company has beceme the Vicksburg, Shreveport & Pacific Railroad Company, if there is any virtue in the judicial proceedings to foreclose the mortgage and the Legislative Act of *1245 1877. There was no creation of any new corporation, but the continuation of a subsisting corporation under a new name. The act has stood unchallenged for years, nor is the court advised of any ground on which it can be assailed. It is not of easy application that there can be repugnancy to the organic law and legislation of this character, so necessary to give effect to the changes so apt to occur in the operation of railroads. The court conceives the present Vicksburg, Shreveport & Pacific Railroad Company must be deemed clothed with all the rights of its predecessor, and is a subsisting corporation and is competent to stand in judgment.
Nor can it be denied that the lands sued for in this case are embraced in the grant of 1856. Unless that grant has been withdrawn or annulled, the present corporation is vested with title to the lands. These defendants insist the lands have reverted to the United States by the lapse of time — i. e., the ten years. That the company did not build the road on the original line; that the Legislature of Louisiana has declared the grant forfeited, and other defences are advanced assailing the right of the corporation to the lands granted. It is true the railroad was not completed within the time stipulated in the grant. It is also true, we believe, there was a deviation from the line originally designed for the road. But it is equally true the road has been completed and the United Statef has never insisted on any cause of forfeiture and has never forfeited the giant. Prom time to time the certificates of the completion of the road have been filed in the office of the Commissioner of the General Land Office, and, though long after the ten-year limit, have been accepted as satisfactory evidence of compliance with the grant. So long as the grantor interposes no objection, we can not perceive the right of defendants to urge non-compliance with conditions we must deem waived by the grantor. We do not enlarge on this point because, in our view, unnecessary, especially in view of the elaborate decisions in 41 An. 896; 42 An. 1007, and 44 An. 981.
Nor can we understand how the State of Louisiana can forfeit lands or declare annulled the grant of 1856. The State has no interest. It was the trustee under the act of 1856, but its functions have long since ceased, and before the legislative act in Which it undertook to annul the grant. 44 An. 981.
We have given careful attention to the claims advanced in behalf of some of the defendants that they hold under home *1246 stead entries. If such entries had been made they would have been in the face of the grant and with the implied notice that the grant stood, notwithstanding all conditions and limitations, unless insisted on by the United States. In our view the proof fails to show any homestead entries except those held for cancellation by the officials of the land office. In our opinion the defendants stand simply as trespassers without title. It is well settled within our jurisprudence that claims for improvements by defendants in this position are admitted sparingly. We find no evidence in the record that defendants have made improvements of that character that some cases have recognized as affording a basis for a claim against the owner. 16 La. 414; 3 R. 317; 12 R. 254. But, waiving this question, it is settled that trespassers, without title and without knowledge or presumed knowledge of the title of the owner, owe fruits from the date of their possession, and we see no objection to the verdict and judgment that compensates any supposed liability for improvements by the claim of plaintiff for rents and revenues. 7 N. S. 112; 6 R. 192; 12 R. 256. The verdict was for plaintiff, with the addition of compensating the claim for improvements with that for revenue; judgment followed the verdict and both substantially responded to the issues, and we do not think the objection of the defendant on this ground is well taken.
It is undoubtedly better that juries should be kept together after the charge and it is impliedly required by the Oode. But merely because in this case there was a separation, we do not think the verdict should be set aside.
Rehearing refused.