## PEARCE ET AL *vs.* FRANTUM.

#### ON A REHEARING.

The possession of more than a year suffices to give the possessor a right to be maintained in his possession, until a better right is shown, and that he makes the fruits his own before judicial demand.

The Spanish law provided that whether the party evicted possessed in good or bad faith, he was not bound to deliver up the premises, to the owner, until he shall have been paid for the expenses incurred on account of them.

So, the possessor in bad faith may claim in offset of rents or fruits, which he is condemned to pay, the enhanced value which his improvements added to the property.

The son may become the owner of his father's improvements on land from which he is evicted, after his purchase, and is considered in the same light, in respect to his right to be paid for valuable improvements, as his father, and previous possessor. This right to be paid for useful improvements is a real right, and the party evicted may retain possesion until he is remunerated.

The first opinion in this case was pronounced at October term, 1838. The counsel of the plaintiffs urged a rehearing and the following petition was presented. At the close of the term, after judge Bullard had left the court, the other two judges (Martin and Carleton,) having some doubts respecting the correctness of the decision, granted a rehearing.

WESTERN DIST.
October, 1840.

PEARCE ET AL.
vs
FRANTUM.

*Winn*, for the plaintiff, asked for a rehearing: · It is respectfully urged that the defendant was never a possessor in good faith, but on the contrary, that he was a possessor in bad faith ; and a possessor can occupy but one of two positions, he must be either a possessor in good faith, or in bad faith. *Civil Code of* 1808 ; *page* 102 ; *article* 7. There are two sorts of possessions, those who possess honestly as master of the thing, and those who possess knavishly (*mauvaise foi.*) No possessor can be truly master and possessor as owner without title, good upon its face, and not a mere naked possession unaccompanied by any manner of title. *Civil Code, page* 478, *article* 21. [He then goes into a critical examination to show that the defendant was without title, and necessarily a possessor in bad faith, and sums up the law of the case as follows.]

1. If this view of the evidence and law be correct, then the defendant was a possessor in bad faith *ab initio,* and we are entitled to recover rent from the year 1820. See *Donaldson et al.* vs. *Hull,* 7 *Martin, N. S.,* 112, which is much stronger for the defendant than the case at bar.

In the case of "*Donaldson et al.* vs. *Hull,* 7 *N. S.,* 113, the present senior justice, in delivering the opinion of the court, said : "The defendant then is bound to restore the slaves and the value of their services ; and we think the Parish Court erred in confining its judgment to the period that elapsed between the demand and the decision of the suit. The case appears peculiarly a hard one, as the defendant bought in *moral* good faith, &c."

2. The court expresses the opinion, (and the claim for improvements is based thereon) that "in respect to the right to be reimbursed for useful expenses, by which the property has been made more valuable to the owner, the Code makes little or no distinction between the possessor in good or in bad faith." This position we feel bound, respectfully, to controvert, as inconsistent with the *previous* opinions of this court. The court bases this opinion upon *Pothier, No.* 346 ; 8 *Martin, N. S.,* 609 ; 2 *Louisiana Reports,* 174, and 3 *Louisiana Reports,*

WESTERN DIST.
October, 1840.

PEARCE ET AL.
vs.
FRANTUM.

543. The doctrine laid down by *Pothier* is in the words *"Cette obligation ne naît que de cette régle d'équité qui ne permet pas que quelqu'un s'en richisse aux dépens d'autrui ; suivant cette régle, le propriétaire ne doit pas profiter aux dépens de ce possesseur, de l'impense que ce possesseur a faite, mais il n'en profite qu'autant que la chose le trouve augmentée de valeur par cette impense ; il ne doit donc être obligé à le rembourser que jusqu'à cette concurrence, quand même se possesseur aurait déboursé d'avantage."* It is respectfully submitted, that *No.* 346 of *Pothier* does not bear out the principle as applied by the court. The commencement of the number is in these words, *"ce principie, que le possesseur de bonna foi doit être remboursé des depens utiler, &c,"* and the number is entirely confined to pointing out the doctrine in relation to possessors in good faith, and its application to such possessors is not contested.

I will now attempt to show that the provisions of the *Code of* 1808, and the decisions of this honorable court, present a striking and wide difference between the possessor in good faith and the possessor in bad faith, on the question as to the reimbursement they are respectively entitled to for improvements made on lands from which they shall be evicted. *Old Code,* 320 ; *article* 15, provides that " he to whom the thing is restored must allow, even to the person who possessed it through a want of good faith, for all the necessary and useful expenses which have been incurred for the preservation of the thing." This does not expressly *prohibit* the allowing more than the necessary and useful expenses for preservation, but the implication is strong. The latter paragraph of *article* 12, *page* 104, expressly refers to *bona fide* possessors.

" Nevertheless, if the plantations, edifices or works, may have been done by a third person evicted, *but not sentenced to make restitution* of the fruits, because said person possessed *bona fide,* the owner shall not have a right to demand the suppression of the said works, plantations or edifices, &c., but shall reimburse, &c." These two articles, taken together exclude the idea that the possessor in bad faith has the same rights as the possesor in good faith ; and we contend that, by a fair

construction of them, the possessor in bad faith is only to be reimbursed for such expenses as were "necessary and useful" " for the preservation" of the land and it will not be pretended that clearing land is *necessary and useful for its preservation*. That this honorable court has established a distinction between the relative rights of the possessor in good and bad faith, in such cases, would seem to be far from doubt. In the case of *Herriot et al.* vs. *Broussard*, 4 *Martin, N. S.*, 267, (where the defendant had an imperfect title) the present senior justice, who delivered the opinion of the court said : " the defendant's claim for remuneration, on account of ameliorations or improvements on the disputed premises, was properly rejected by the court below. He is not one of those possessors to whom our laws accord such a right ; *he knew that he held without title*, for he did not accept that intended to be conveyed, &c." In behalf of this decision we may invoke the maxim, " *stare decisis*," and the general principle, that the construction given by courts to a law nearest its date is most to be relied on. It is respectfully submitted that the cases referred to do not bear out the opinion of the court as above expressed. In the case in 8 *Martin, N. S.*, 609, the court says ; "by law the owner who evicts a *bona fide* possessor, &c." must reimburse. In that case the defendant had a title, on its face, translative of property, and was evicted by *superior title*. In the case of *Boatner* vs. *Ventris*, 2 *Louisiana Reports*, 173-4, the court says " this case has already been before us. The question which it presented in respect to the title was decided, and the cause remanded for an inquiry into the value of the improvements during the time the defendants were in *good faith*," and when the same case was previously remanded the court said " the cause will have to be remanded to inquire into the value of the improvements placed on the land while the appellees were in *good faith*" and the decree follows, " and it is decreed that the case be remanded to ascertain the value of the improvements made by the defendants *while in good faith*." In the case of *Elliott et al.* vs. *Labarre*, &c., 3 *Louisiana Reports*, 543, the court said, " as to the law, the owner who recovers his property from a *bona fide* possessor has to pay

him the value of the improvements put on it." These last three are the cases relied upon by the court, and they all carefully keep up the distinction between the possessor in *good and bad faith.* One is remanded with special instructions not to go beyond the period of good faith. Whilst the case first cited in 4 *Martin, N. S.,* 267, broadly declares that the possessor in bad faith is not entitled to be reimbursed for improvements.

3. Lastly, we contend that the purchase of the improvement by the defendant did not subrogate him to the rights of the elder Frantum. Subrogation is never presumed unless in the special instances established by the Code, and this does not come under any of the heads of legal subrogation. *Old Code, pages* 288, 290, *articles* 149, 151; conventional subrogation must be express, *Ibid.* 150. If the defendant is subrogated by his purchase, then also must the plaintiffs be subrogated by theirs, and considering it as proved, that the defendant and his ancestor possessed in bad faith, the plaintiffs must be entitled to recover the fruits long posterior to the death of the elder Frantum, and if the defendant become subrogated to the advantages, he must take the disadvantages along with them. But it is respectfully submitted, that if the elder Frantum had any right for the improvements made by him, that right must have become the inheritance of his heirs.

If the defendant possessed in *bad faith,* a strong reason may be presented why the equity of the law should not extend to him. In estimating the value of the fruits, the court gives about three dollars per annum per acre for the improved land, or for the one hundred acres, three hundred dollars per annum. Now it is well known that such land will produce about one bale per acre (perhaps one bale per arpent) or one hundred bales for the one hundred acres. This has been worth on an average *at least* forty dollars per bale or four thousand dollars per annum, say that it required ten hands to cultivate it, and deduct fifty dollars per hand for expenses and one hundred and fifty dollars for hire of them, and we have two hundred dollars per hand per annum or two thousand dollars, less three hundred dollars, which

WESTERN DIST.
October, 1840.
───────
PEARCE ET AL.
*vs.*
FRANTUM.

the defendant has actually reaped as a reward from the land of plaintiff, certainly a sufficient reward for a possessor in bad faith. For all which reasons the plaintiffs pray a rehearing on these three points.

1. That the defendant was in bad faith *ab initio* and owes fruits to the plaintiffs as such, from the fall of 1820 being the time he went into possession after the death of his father, as proved by Mr. Compton, *page* 7 of the record.

2. The defendant being a possessor in bad faith, is not entitled to be reimbursed for improvements.

3. By the purchase at the sale of Frantum, the elder defendant did not become subrogated to his father's rights, and even if he is to be reimbursed it should only be for fifty-five acres improved by him after he acquired possession.

And now, at the present term, the case came on for trial on the rehearing.

*Brent,* alone, appeared for the plaintiffs against the decision of the court, and insisted that the defendant was shown to be a possessor in bad faith.

1. The *Old Code,* 478, *art.* 21, declares that the possessor in bad faith, is one who possesses as owner, *knowing he has no title, or that his title is vicious and defective.* Such was Frantum's possession. We prove, by an unimpeached witness, his *frequent* admissions that *he had no title to the land.* Can he have been then any thing else but a *knavish possessor?* To consider him a possessor *bona fide,* both the letter and spirit of the law must be disregarded. *Pothier on possession, No.* 6, 17, 18; *Old Code,* 102, *art.* 7; *Idem.,* 478, *article* 21.

2. He not only knew 'his own want of title, but he was aware of the existence of the plaintiffs' title. It is shown that the large Indian grant, under which plaintiffs claim, was surveyed *twice* before defendant took possession; and that he *knew of these surveys.* It is also shown that this Indian title was confirmed by public act of congress, two years anterior to the defendant's possession, and that every survey made of this claim, included our land. Under these circumstances, to call the defendant an *honest* possessor, is to give a rather new import to the word here employed.

WESTERN DSIT.
October, 1840.

PEARCE ET AL.
vs.
FRANTUM.

·3. The purchase made by Frantum, of his father's improvement, conveyed no title, and he *knew* that it conveyed none. His admissions that he had no title, were made *after* this purchase, and besides it was impossible that he could have believed that he was getting a *good* title to one hundred acres of *cleared* land, for the trifling sum of two hundred and thirty dollars. When the witnesses show, that at that very time, the mere clearing of the land was worth thirty dollars per acre. On the whole, the evidence is conclusive that Frantum was a possessor in *bad faith,* if there be such a thing either in morals or in law.

4. We contend then, that being a *knavish* possessor, *ab initio,* he owes us fruits from the commencement of his possession. 1 *Martin, N. S.,* 579; 7 *Idem.,* 112.

5. Neither is he entitled to claim for *improvements.* In the case of *Boatner* vs. *Ventris,* this court remanded the cause to ascertain the value of improvements *while the defendant was in good faith,* and upon the reappearance of the case before the same tribunal, the same principle was recognized and acted upon. We invoke the maxim *stare decises.* 8 *Martin, N. S.,* 657; 4 *Idem.,* 267; 2 *Louisiana Reports,* 174.

' *Elgee* and *Downs* made brief arguments, for the defendant, in support of the opinion of the court as first pronounced.

*Bullard, J.,* delivered the opinion of the court on the rehearing.

In the opinion first given in this case, the court held : 1st. That the defendant was liable for fruits from the institution of the suit, and not before. 2d. That he was entitled to the costs of improvements left upon the land, by which it was rendered more valuable to the owner, in compensation of fruits.

1. The first proposition has not been much combated in the argument upon the rehearing. We think it perfectly clear, that with respect to fruits, the possession of more than a year suffices to give the possessor a right to be maintained in his possession, until a better right be shown, and that he

makes the fruits his own before the judicial demand : *Code of* 1808, *p.* 478, *arts.* 23, 24, 25.

2. The right of Frantum to be compensated for the valuable improvement upon the land, by clearing it, and particularly for that part of the clearing which had been made by his father, has been again strenuously resisted. We have again given to the whole subject an attentive consideration, and have examined such authorities as are within our reach at this place.

The character of Frantum's possession, his liability to restore fruits upon eviction, and his right to be paid for useful improvements, are to be determined by the provisions of the *Code of* 1808, and the *Spanish law* then in force. Admitting that the provisions of the *Code* itself left it doubtful whether Frantum was or was not a possessor in bad faith, in that sense which would deprive him of a right to claim for improvements, yet, the 44th *law,* 28th *title* of the 3d *Partida,* appears fully to sustain the court in the position first assumed, to wit : that "in respect to the right to be reimbursed for useful expenses, by which the property has been made more valuable to the owner, the *Code* makes little or no distinction between the possessor in good or bad faith." The words of that law of the *Partida* are : " Men may incur expenses on account of other persons' houses or lands, not by erecting new works there, but by making necessary repairs, or doing other things there, by which the estate is benefited. In that case, we say that if such expenses were necessary, they who made them, may and ought to recover them back, while in possession of the estate upon which they expended them, whether they hold in good or in bad faith ; and, though the owner may evict them by a judgment of court, they will not be obliged to deliver him the house or estate, until he shall have paid the expenses incurred on account of the same."

*The Spanish law provided that whether the party evicted possessed in good or bad faith he was not bound to deliver up the premises to the owner, until he shall have been paid for the expenses incurred on account of them.*

These principles were derived from the *Roman law.* *Pothier* supposes two cases, one in which the party evicted had paid off incumbrances upon the property, and the other in which he had incurred expenses for the preservation of the thing, which the owner himself would have been obliged to

make, other than those merely conservatory. In these two cases he says, the law does not distinguish between the possessor in good or in bad faith. *Cujas* thinks, that notwithstanding the rigor of the law, thus apparently restricting the right to claim for expenses, to those which were necessary and not merely useful, yet the possessor in even bad faith, is entitled to be reimbursed, so far as he had rendered the property more valuable, upon the great maxim of equity : *Neminem æquum est cum alterius detrimento locupletari.* It is true it was a controverted point among the jurists, but all appear to agree that the possessor in bad faith may claim in offset of rents or fruits, while he is condemned to pay the enhanced value which his improvements have added to the property : *Pothier, Domain de Propriètè, No.* 343, *et seq.*

So, the possessor in bad faith may claim in offset of rents or fruits, which he is condemned to pay, the enhanced value which his improvements added to the property.

*Merlin,* after treating this subject *ex professo,* and in a manner as usual with that author, which leaves little to be said on either side, and after discussing the opinions of *Cujas, Favre* and other illustrious doctors, opinions not always in harmony with each other, sums up his conclusions in the following manner : " We may, therefore, lay it down as a settled rule, that the proprietor who sues for an immoveable (*un fonds*) never ought to enrich himself at the expense of the possessor, whether in good or in bad faith, no matter in what manner the maxim ought to be applied." 1 *Repertoire du Jurisprudence, verbo Amelioration.*

But if the possessor, before judicial demand and after a quiet and uninterrupted possession of more than a year, is to be regarded as the owner so far as concerns the fruits, and to be maintained in possession until a better right be shown, according to the language of the *Code of* 1808, *p.* 478, at what time is he to be considered as being in bad faith, so as to deprive him of the value of useful improvements made before such judicial demand ? It will be recollected, that a great part of the improvements in this case, were made between the years 1811 and 1821, before the suit was brought. Mr. De Malville, in discussing the part of the *projet* of the *Code Napoleon,* analogous to ours on this point, regretted the vague manner in which the articles were drawn up, as likely to

give rise to numerous questions, as to the point of time at which the good faith of the possessor should be considered as having ceased ; that by the previous jurisprudence it was well settled, that the possessor was reputed in good faith until judicial demand, and it was carried so far, that if the true proprietor suffered his suit to be dismissed, (*laissait premier instance*,) the possessor's good faith was considered as restored. " It is very certain," adds this author, " that to make the period of the restitution of fruits depend upon the good or bad faith of the possessor, would be to give rise to a thousand contestations ; and how could this bad faith be proved, that is to say, the opinion which the possessor had, that his possession was unjust ? Must parole evidence be admitted to probe his conscience ?" *Discussions of the Code Napoleon.*

But it has been urged that the improvements made before the institution of the suit, ought to be compensated by the fruits and advantages derived from the place before that period. It is obvious, however, that this would be but an indirect way of compelling a restitution of fruits before the judicial demand : for if the fruits were already his, as the presumed owner of the land, why should he be charged with them as an offset to valuable and permanent improvements put upon the place, while he was in law the presumed owner.

It is further contended, that the present defendant did not become, by the probate sale, subrogated to any right of his father to be paid for the improvements made upon the land, as the court first decided.

The defendant, it appears, has acquired all the right of his father, resulting from his previous improvement. If such improvements would have entitled the father, under the act of Congress of 1814, to a pre-emption right, in the event of the land turning out to be vacant, then the purchaser would have been entitled to purchase as his assignee ; and if in the event of the father's eviction, he would have been entitled to be paid for the improvement, that right, in our opinion, passed to the son. The right to be paid for useful improvements

*The son may become the owner of his father's improvements on land from which he is evicted, after his purchase, and is considered in the same light, in respect to his right to be paid for valuable improvements, as his father and previous possessor. This right to be paid for useful improvements is a real right, and the party evicted may retain possession until he is remunerated.*

is a real right, that is to say, the party evicted may retain possession until he is remunerated.

We, therefore, conclude, that the judgment first pronounced ought to be maintained, and it is ordered accordingly.