## Reuben M Gibson *v.* Hutchins & Vaughan.

It is only the possessor in good faith, believing himself to be the owner, who can recover from the true owner the value of ameliorations inseparable in their nature from the soil.

Although a settler upon public lands who hopes to obtain a title under the preëmption laws is not a trespasser, he has no claim against a patentee of the Government for the ameliorations made upon the land of which he has had the use. He has no claim against the Government for the value of the improvements made, and the assignee of the Government takes the land free from any liability.

A mere settler, even with the hope of preëmption, until he actually makes his entry, has no title, and improvements made by him on public land are presumed to be for his own benefit and at his own risk.

The case of *Hemkin* v. *Overly* affirmed, and the cases of *Pierce* v. *Frantum*, 16 L. 422 ; *Kellum* v. *Rippey*, 3 Rob. 188, and *Williams* v. *Booker*, 12 Rob. 253, so far as inconsistent with the present opinion, overruled.

APPEAL from the Ninth District Court for the parish of Concordia, *Cooley* J. *Stacy*, *Snyder*, *Shaw*, *Sparrow*, and *George Eustis*, for plaintiff and appellant. *A. N. Ogden & Stansbury* and *York*, for defendant.

Spofford, J.  This is a petitory action for a tract of land belonging to what is commonly known as the "Bringier Grant." A patent from the United States Government issued in 1853 to the assignees of the original grantee, in pursuance of a judgment which they had obtained against the United States under the special laws allowing the institution of suits for such purposes.

The plaintiff holds under a sale made to effect a partition between all the co-proprietors of this claim.  We see no such defect in the plaintiff's title as would preclude him from succeeding in a petitory action against a mere possessor without title.

But the defendant contends that the plaintiff's authors, *Curry* and *Garland*, relinquished all claim to such portions of the grant as were in the possession of actual settlers who would be entitled under the laws of Congress to a preëmption if the land had been subject to entry.  The defendant, *Vaughan*, claiming to have been in this category of persons, insists that the plaintiff by this act of his authors, is estopped from asserting title against him.

The relinquishment alluded to is embraced in a letter to the Register and Receiver of the Land Office at Monroe, dated in January, 1842.  The expressions of *Curry* and *Garland* in this letter were as follows : " You will observe that it is not our purpose to interpose any obstacles against any persons who had a good preëmption right previous to our purchase who may not have paid it out of your office, we only desire in such cases to be notified of the application so that we may make opposition if necessary to protect our rights.  We know who are in good faith entitled to preëmption rights, and only desire to be protected from illegal claims.  You will please to take notice that *Messrs. McGuire & Ray* are authorized to act as our agents in the premises, and whenever an application is made for preëmption within the limits of our claim we request you will notify them or one of them.  In making this relinquishment in favor of innocent purchasers and actual preëmptors, we do not intend to be understood as relinquishing any right or claim for indemnity that we may have on the United States, to give us an equal quantity of land elsewhere, or to pay us for the lands *so sold* by you or your predecessors."

69

This relinquishment must not be extended beyond its plain import. In terms it could only inure to the benefit of such persons as availed themselves of it by an *actual entry under a preëmption claim.* The defendant does not pretend to have so located any part of the land in dispute. If an offer was ever made in his favor by *Curry* and *Garland,* (which is not altogether clear,) he has constantly rejected it. There never was a contract between him and them, and there is no estoppel.

The appellee's prayer for a reversal of the judgment in favor of the plaintiff must, therefore, be refused.

The plaintiff has appealed, and complains of that portion of the verdict and judgment which awarded to the defendant the sum of six hundred and twenty-eight dollars "for the enhanced value of the land" by reason of the improvements made upon it by the defendant's deceased brother, under whom he holds. These improvements, as they are called, consisted in clearing, ditching, &c., or such ameliorations as the settler made with a view to enable himself to raise crops and reap fruits from the land.

The right of a possessor to recover of the true owner for ameliorations inseparable in their nature from the soil cannot, it appears to us, be recognized in any case, unless the possessor was at least a possessor in good faith, believing himself to be the owner. The mere possessor is presumed to have made such changes for his own amelioration, and to have received a sufficient reward in the immediate benefit which he reaps from the enhanced production of the soil. Perhaps the true owner would have preferred that the primitive forest should remain. Perhaps the ditching will not suit the purposes for which he wishes to use the land. To place the real proprietor at the mercy of a possessor in bad faith by requiring him to pay the latter who has, without just authority, changed the face of the land for selfish purposes of his own, does not accord with those rules of law which give the dominion of the soil to the proprietor only, or to one who has a right to consider himself a proprietor for the time. An intruder may recover such expenses as are necessary for the preservation of the thing. A *negotiorum gestor* may recover what he has spent in doing the business necessary to be done for another, even without a mandate. It is a general rule of equity, that no one should enrich himself at another's expense. But this doctrine must not be stretched so far as to let an intermeddler recover for wilfully doing what was not necessary to be done, or what the owner might not wish to have done, and what the law did not require to be done. If an intermeddler goes to expense with the single view of benefiting himself and reaps the benefit, he cannot demand a reimbursement for his time and trouble from the person upon whose property he has intruded, by suggesting that he too has been incidentally benefited.

The question now arises, was the defendant *in good faith* when he made the alleged improvements on the land recovered by the plaintiff. "The possessor in good faith is he who has just reason to believe himself master of the thing which he possesses, although he may not be in fact, as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which in fact belongs to another." C. C. 3414.

"The possessor in bad faith is he who possesses as master, but who assumes this quality when he well knows that he has no title to the thing, or that his title is vicious and defective." C. C. 3415.

"He is a *bona fide* possessor who possesses as owner by virtue of an Act *sufficient in terms to transfer property*, the defects of which he was ignorant of." C. C, 495.

The defendant does not show that he ever possessed *under a title translative of property.* He produces no title whatever. He says he had a hope of getting a title—a preëmptor's claim. It seems to us a contradiction in terms to call such an expectation a title translative of property. If it is not, then the defendant's possession lacked an essential element of the *possession in good faith.* He alleges in the answer that, when his brother, *Burril T. Vaughan,* went upon the land in 1839, it was "public land," and that his brother acquired a right of preëmption upon it which has descended to himself. Although after the Act of Congress of September 4th, 1841, *B. T. Vaughan* might not be technically a trespasser upon the land, and, as such, be liable to fine and imimprisonment, yet he did not by virtue of that Act become, in any sense, an owner of the land. The legal title remained in the United States until the patent under which the plaintiff holds issued in 1853 ; there was an incipient title or inchoate right in *Bringier* or his assignees before the defendant's brother went upon the land.

From the decision of the court in the claim of *Curry* and *Garland* against the *United States*, it followed that the land in question had not been properly subject to entry by actual settlers. And if it were, *Vaughan* could not have had even an expectation of claiming by such a title the whole of the land here in controversy, or half a section, for only a quarter of a section could thus be entered. He had no claim against the United State for improvements, He was rather indebted to the United States for the privilege of living so long undisturbed upon the public land. And the United States ceded its rights to the plaintiff's authors. They took it free from any legal demand against either the government or themselves for improvements.

The defendant relies upon the cases of *Pierce* v. *Frantum*, 16 L. 422 ; *Kellum* v. *Rippey*, 3 Rob. 138, and *Williams* v. *Booker*, 12 Rob. 253, as sanctioning his claim for improvements.

These cases were fully considered by this court before determining the case of *Hemkin* v. *Overly*, decided at Monroe last summer, and were, in one particular, overruled. We found ourselves unable to class a mere possessor of the public lands of the United States, even with the hope of a future entry by preëmption amongst "possessors in good faith." In other words, we could not consider an expectation of getting a title, as a title, which would put the possessor in good faith.

The overruled cases conceded to a settler upon the United States lands, who possessed with the hope of securing a preëmption, the right of retaining the land against a vendee or patentee of the United States Government until such patentee should reimburse the settler the increased value of the property as resulting from improvements and expenses upon it during the settlement.

We said in *Hemkin* v. *Overly* that, "we are unable to recognize the doctrine that one who makes improvements upon property to which he knows he has no title, has any legal or equitable claim to reimbursement for such improvements."

A mere settler, even with the hope of preëmption, until he actually makes his entry, *knows that he has no title.* He has an expectancy, and nothing more. He is a tenant by sufferance, He makes improvements for his own

benefit and at his own risk. The Government does not warrant him a title nor agree to indemnify him for his labor in case he gets none. Whilst he is permitted to settle there by the Government, he may reap the fruits and live rent-free. But when the Government parts with the title to a third person, that title carries with it such inseparable ameliorations as the land may have received from the settler. The settler has no claim upon the owner.

We conceive this to be the true doctrine, as deduced from our own Code. And it is in harmony with the jurisprudence of the federal courts and those of our sister States, to which the case of *Pierce* v. *Frantum* presents so marked a contrast.

We think it a matter of some moment that the jurisprudence upon the subject of the public lands and the rights growing out of settlements upon them, should be as uniform as possible throughout the several States.

Finally, the defendant has contended that he was entitled to be considered a possessor in good faith by reason of the acts and promises of *Curry* and *Garland* relative to the actual settlers. We find no evidence of any contracts between defendant's brother and *Curry* and *Garland* to hold under them, on the contrary, he has been holding in spite of them, and contesting their title always. He never accepted any of their propositions which, as we have already observed, were precise and predicated only upon the supposition that the settlers would make *actual entries* under their preëmption claims, or purchase of them. The defendant did not do so, and we find no evidence of a promise by the owners of the "Bringier Grant" to pay him for his improvements.

We do not find the strong equities in favor of the settler in this case which the appellee sees. If his brother has enhanced the value of the land, he has had the use of it for more than ten years without paying any rent. By having no title, he has escaped the necessity of paying any taxes. He had a liberal offer from those who turned out to be the true owners, and might have bought from them for a small sum. This he declined. If the law does not require the plaintiff to pay the defendant we have no power to assess the value of these improvements, or the enhanced value of the soil as a tax upon him.

The difficulty of making such an assessment is exhibited by the record in this case. It is almost impossible to approximate a just estimate of the enhanced value of the soil, flowing only from the clearing and ditching, and excluding all other considerations.

It is, therefore, ordered and decreed, that the judgment recognizing the plaintiff as owner of the land claimed in his petition be affirmed; and it is ordered, that in all other respects the judgment be avoided and reversed, and that there be judgment against the defendant upon his demand in reconvention, and that a writ of possession issue in favor of the plaintiff; it is further ordered and decreed, that the defendant pay costs in both courts.