## Case No. 5,177.

GAINES v. NEW ORLEANS.

GAINES v. LIZARDI et al.

[1 Woods, 104.][1]

Circuit Court, E. D. Louisiana. April Term, 1871.

[1] [Reported by Hon. William B. Woods, Circuit Justice, and here reprinted by permission.]

E. T. Merrick and J. Q. A. Fellows, for complainant.

Miles Taylor, H. M. Hyams, and J. McConnell, for defendants.

BRADLEY, Circuit Justice. In these cases the defendants except to the master's report. It does not appear, by the report of the master's minutes, that the exceptions were taken before him. The rule of practice is that no exceptions will be heard by the court which have not been made before the master, so as to give him an opportunity of considering the same and correcting his report. But as counsel on both sides have evidently acted under a misapprehension of the rule, I will not overrule the exceptions on that ground, especially as some of them are of great importance to the rights of the parties. But it is desirable that the rule should be observed, and hereafter in the absence of very special circumstances, the court will feel bound to enforce it. It was declared by the supreme court of the United States, in McMicken v. Perin, 18 How. [59 U. S.] 507, and in other cases there referred to.

The principal exceptions are:

1. That the defendants did not realize the rents and profits which the master has charged them with. As this is a matter of fact arising upon the evidence, the court will not undertake to reexamine and retry the whole case; but will allow the report to stand, unless some particular matter is pointed out in which the master has committed an error, or unless it be shown that he has adopted some erroneous principle on which his account or calculation is based. It must be remembered that where the possession is in bad faith, the possessor will not only be charged with what he has received, but with what he might have received; in other words, with the worth or value of the property. The case of the city will be adverted to more particularly hereafter.

2. It is excepted, secondly: That the mas-

ter has not allowed the defendants the prescription of three years for rents and profits received by them before the commencement of the suit. In this the master only followed the decree. The supreme court of the United States decided that the defendants were possessors in bad faith, chargeable with notice of the defectiveness of their title, and that they must severally account to the complainant for the rents and profits received by them, from the time that they severally came into possession; and, being possessors in bad faith, I think, by the law of Louisiana, they cannot claim the benefit of prescription with regard to rents and profits, any more than with regard to the land itself. There are repeated decisions to this effect, some of which are referred to in 2 Hen. Dig. tit. "Possessions," II. a, p. 1195, No. 5. And Touillier says: "Bad faith renders him (the possessor) liable to account for not only the fruits which he has received, but even those which he might have received, and which have perished by his negligence; and this obligation is extinguished only by the prescription of the thing itself; and restitution is due from the day when the bad faith commenced." 3 Droit Civile Française, pp. 71, 72.

The defendants' counsel have referred me to a provision of the Code of 1808, which declares that the prescription of 30 years may be pleaded even by a knavish possessor. Precisely the same provision is found in article 3438 of the present Code, only a little differently rendered in English. It reads thus: "The same species of property is prescribed for by 30 years, without any title on the part of the possessor, or whether he be in good faith or not." The species of property referred to is immovables.

It is a sufficient answer to the argument derived from this article to say that it was not overlooked by the supreme court of the United States, and that its rejection as applied to this case is res judicata. And it is hardly necessary to remind the defendants, that if Mrs. Gaines did not arrive at full age until December 31, 1827, as alleged in the bill, the 30 years had not expired when the bill was filed, letting alone the previous litigation of many years which had interrupted the prescription.

3. The defendants except, thirdly: Because the master charges them with the rents and profits of the buildings and improvements, as well as of the land in its original state as owned by Daniel Clark. They claim that they are entitled to the use of the improvements, whether erected by themselves or by their predecessors in possession, and are liable to the complainant only for the use of the lands as Daniel Clark left them.

This objection involves the general question of the defendants' right to compensation for improvements and the extent thereof and exceptions thereto. Generally speaking, according to article 500 of the present Code, which is identical with the corresponding article in the Code of 1808, and with article 555 of the Code Napoleon, when plantations, constructions and works have been made by a third person, with his own materials, the owner of the soil has the right to keep them, or to compel the author to take away or demolish them. If he keeps them, he must pay for the value of the materials and the price of the labor. In other words, he must pay for their original cost. From the moment he approves of and accepts the improvements, he is regarded as having ordered them. Locré, vol. 8, p. 181.

This rule is a modification of the Roman law, which made a distinction between necessary and useful works. If necessary to the preservation of the property, the possessor in bad as well as in good faith was entitled to compensation; but if useful only, whilst the latter was entitled to reimbursements, the former had only the right to withdraw and keep the gain which he had derived from the improvements. The Roman rule seems to be adopted in this state, in the case of improvements which cannot be separated from the property, and cannot, therefore, according to article 500, be removed at the owner's option, such as the clearing of wild land and rendering it fit for cultivation. In such cases the possessor is permitted to retire with the profits he may have made, but without any claim of compensation for his labor. Gibson v. Hutchins, 12 La. Ann. 547, overruling the previous case of Pearce v. Frantum, 16 La. 423.

The supreme court of this state seems also to have established another exception to the general rule laid down in the Code, namely, that a possessor, knowing that he has no title, that is, a mere trespasser or intermeddler, is not entitled to any compensation for improvements. This was held in the case of Herriot v. Broussard, 4 Mart. (N. S.) 267. The court say: "The defendant's claim for remuneration on account of ameliorations or improvements on the disputed premises was properly rejected by the court below. He is not one of those possessors to whom our laws accord such a right; he knew that he held no title, for he did not accept that intended to be conveyed, etc."

The same doctrine is laid down in Gibson v. Hutchins, 12 La. Ann. 547. Referring to a previous case not reported, the court say: "We said in Hemkin v. Overly, that we are unable to recognize the doctrine that one who makes improvements upon property to which he knows he has no title has any legal or equitable claim to reimbursement for such improvements."

The court applies the doctrine to the case of a settler, who takes possession with the hope of a preemption. "Until he actually makes his entry, he knows he has no title. He has an expectancy and nothing more. He is a tenant by sufferance. * * * When

the government parts with the title to a third person, that title carries with it such inseparable ameliorations as the land may have received from the settler. The settler has no claim upon the owner. Of course the possessor, who knows he has no title, is a possessor in bad faith."

A subsequent case to that of Gibson v. Hutchins—Cannon v. White, reported in 16 La. Ann. 85–91,—leaves us in some uncertainty as to the true distinctions to be made on this subject. The defendant in that case had reason to suspect his grantor's title (which was a fraudulent one), and was held to be a possessor in bad faith. He went into possession in 1853, when only 250 acres of the land was under cultivation. He remained in possession 8 years, and made and erected improvements valued at $5,250. The court considered that the use of the 230 acres of additional clearing and the cord wood consumed, more than compensated for the expense of clearing, and set off one against the other. But they allowed him compensation for his other improvements. In other words, he was allowed for his inseparable improvements (the additional clearing) only what he was able to realize therefrom, in accordance with the doctrine of Gibson v. Hutchins, and for his constructions he was allowed cost.

In the cases before us, the bill charges and the decree declares that the defendants purchased with full notice that the auction sale of Relf and Chew was illegal, null and void, and in fraud of the rights of complainant, and the defendants are decreed to surrender the property to the complainant forthwith, and to account to her for all the rents and profits from the time they came into possession. No deduction or limitation is mentioned except this, that the account should be taken subject to the laws of Louisiana in cases of such recovery. The fair interpretation of this limitation is, that these laws are to determine what elements go to make up rents and profits, and what are the proper allowances to be made in estimating the same under judgments or decrees of this kind.

How is this limitation to be applied in this case? The bill prayed possession of the property and an account and payment of all the rents and profits. The decree grants both without restriction. The defendants, in their answers, did not ask for any deduction or allowance for improvements. They placed themselves altogether upon their title and the invalidity of the complainant's title. They defended the title only. Nothing was said about improvements; and even when they came before the master, no statement in writing is made setting up any such claim. The defendants, if they relied on such a claim, ought to have presented to the master a statement of facts in writing, setting forth their claim, and forming a basis for revisory action, if proper, on the part of the court. The claim of the defendants

is full of embarrassments. Nevertheless, on account of neglect of the proper forms of presentation, if they are really entitled to compensation for improvements under the law of Louisiana, and if that subject has never been considered by the supreme court, it would be very hard to conclude them by the mere forms of law. The supreme court has expressly decreed that the complainant should have immediate possession of the disputed property. The claim for improvements, therefore, if it exists at all, cannot interfere with the surrender of possession. It must either be adjusted in the account for rents and profits or by a subsequent proceeding. A subsequent proceeding would be intolerable on account of the increase and protraction of the litigation that would ensue. The clause of the decree above referred to, requiring the account to be taken subject to the laws of Louisiana, opens a way for the adjustment of this question before the master, upon proper proceedings to be had on the part of the defendants.

Upon a careful examination of the law, I am of the opinion that the defendants, were it not for the difficulties presented by the pleadings, would be entitled to compensation for their improvements erected on the land. And as the question seems never to have been presented to the supreme court for adjudication, the want of a decree for such compensation is not necessarily to be regarded as res judicata against the claim. And although the fact that the defendants have never formally set up such a claim in their answers or in any proceeding in the case, presents a strong barrier to its allowance, and although it may be a great stretch of indulgence on the part of the court to allow it to be set up at this time, still the court may avail itself of that clause of the decree which directs the accounts of rents and profits to be taken, subject to the laws of Louisiana, as a basis for its allowance before the master on a proper presentation of the facts before him. But the defendants are in gross laches, and as a condition of referring the cases or any of them back to the master for this purpose, they must first severally pay the costs of the proceedings already had before the master; and when any case comes up before him, the defendant concerned must present a written statement of the facts on which he bases his claim, together with a statement of the cost of the improvements claimed, in order that the complainant may then elect within thirty days from the master's report thereon, whether she will keep the improvements, or have them removed at the expense of the defendant. Her election should not be regarded as made by reason of her taking possession of the property with the improvements on it, because no proper claim for improvements has ever been made in the cause. And the presentation of the claim under oath is not to be regarded as superseding due proof

thereof. Of course the statement should show when the improvements were erected, and by whom, and if not erected by the defendant, that he purchased the same with the property. Where the grantor and grantee are both parties to the cause, the supreme court of this state has decided that the improvements should be apportioned between the grantor and grantee in proportion to the improvements made by each. Lejeune v. Barrow, 11 La. Ann. 501. But that will depend on the fact whether the grantee has or has not paid for them, and does or. does not look to his grantor for indemnity.

In taking this account, I consider the decree of the supreme court as requiring, and the law of the case to be, that the entire rents and profits are to be accounted for by the defendants. As the accounts have already been taken by the master on this basis, with due allowances for all ordinary expenses for repairs, insurance, taxes, etc., that part of the work will not require to be repeated.

The case of the city is a peculiar one. The estimation of the rents and profits in that case is so uncertain and speculative, that I do not feel entirely satisfied as to the decision that should be made. The master evidently felt the same embarrassment. He says: "As the city received no rents whatever, and no profits, except by the increase of its revenue, it is difficult to fix the amount to which she (the complainant) is justly entitled. The master presents facts and figures which he trusts will enable the court to arrive at an equitable conclusion." He then gives the estimate of various witnesses as to the annual value of the premises, including the draining machine, the average of which was $8,000; and, after deducting the cost of the machine and all improvements and repairs, he brings the city in debt the sum of half a million dollars ($500,000). Another estimate based on the additional revenues derived from the lands reclaimed by the use of the machine, after deducting cost and repairs, shows a profit of two hundred and eight thousand, eight hundred and twenty-five dollars ($208,825). Both of these estimates are vague, uncertain, and somewhat speculative.

A third estimate is made, based on the value of the land and buildings, without the drainage machine, and giving credit for ordinary repairs to the buildings, independent of the machine. This makes the rents $157,600, and the repairs $32,333.21, leaving a balance of $125,267.79. As the master has not signified his adoption of either of these estimates, but has stated the facts to the court for its equitable determination, I have come to the conclusion that it would be equitable and just to set off the profits derived by the city from the drainage machine for the past 35 years against the cost of construction and repairs, and to charge the city with the rents of the building and land,

less the ordinary repairs of the buildings, amounting, as shown by the report, to the sum of $125,267.77. Whilst the profits and advantages of the drainage machine were indefinite and uncertain in amount, there is no doubt of their reality, nor, if we can place any reliance upon the estimates, is there any doubt of their being amply sufficient to reimburse the city for all its expenditures, including even the rent with which it is charged.

A decree will be made confirming the report of the master in the Case of The City of New Orleans, upon the basis of the last alternative stated in his report; and also confirming his several reports in the other cases as far as they have gone, with leave, however, to each of the defendants in the other cases, upon payment of the master's costs respectively, to have a further reference to the master. for estimating the compensation due to them for improvements, upon the terms and principles above stated in this opinion.