CUTTING v. FLORIDA RY. & NAV. Co., MEYER v. SAME, BROWN v. SAME, CENTRAL TRUST Co. v. SAME, GUARANTY T. & S. D. Co. v. SAME, DAVIS v. SAME, (MALLORY et al., Interveners.)

*(Circuit Court, N. D. Florida. December 15, 1891.)*

CONTRACTS—CARRIERS—POOLING AGREEMENT.

A number of competing railroads were negotiating for the formation of a pool of the business from the Chattahoochee river to northern and eastern ports, and a certain steam-ship line agreed with one of them to enter the pool as its connecting line. The companies failed, however, to form a through pool, but formed a pool from the Chattahoochee to the South Atlantic ports only, of which fact the steam ship line received timely notice. *Held,* that the latter was not entitled to share in the profits realized from the pool by the railroad, although the latter may have used the agreement with it as a menace to secure better terms for itself.

In Equity. On petition for rehearing. Denied. For former report, see 43 Fed. Rep. 743

PARDEE, J. This case was submitted to the circuit judge on petition for rehearing, Judge SPEER of the southern district of Georgia, who originally heard and decided the case, having ceased to act in the northern district of Florida. It has been argued orally and by brief, and has been fully considered on all the issues made and sought to be made. The main grounds urged in the petition for a rehearing, in various forms of recital, amount to this: That the master and the judge deciding the cause reached a wrong conclusion on the facts of the case; but complaint is also made that the judge held the exceptions to the master's report to be too vague and indefinite to authorize him to go behind the report to inquire if the master had correctly reported the facts in the case. The strict rule in regard to exceptions to a master's report is that only such exceptions will be heard by the court as have been made before the master; and further, that exceptions must be precise and specific, raising well-defined issues, the finding of the master being *prima facie* correct. See *Gaines* v. *New Orleans,* 1 Woods, 104; *Cowdrey* v. *Railroad Co.,* Id. 331; *Story* v. *Livingston,* 13 Pet. 359; *Medsker* v. *Bonebrake,* 108 U. S. 66, 2 Sup. Ct. Rep. 351; *Burns* v. *Rosenstein,* 135 U. S. 449, 10 Sup. Ct. Rep. 817. As I read the opinion of Judge SPEER, filed in

the case, (reported 43 Fed. Rep. 743,) he did, as a matter of fact, go behind the master's report and examine the testimony taken before the master to ascertain the facts in the case, and found the master's report sustained by the evidence. However this may be, on this application for a rehearing the strict rule has been waived, and all the testimony in the case examined and considered.

The case shows: (1) That in the summer of 1886 the railroad companies engaged in the carrying business from the Chattahoochee river to northern and eastern ports, in connection with their own and connecting steam-ship lines, entered into negotiations with a view to form a pool which should divide the profits, do away with competition, and avoid a war of rates. (2) That the petitioner's steam-ship line from Fernandina to northern ports had been and was respondent's main connecting line in carrying such business as respondent could secure from the Chattahoochee river to northern and eastern ports. (3) That in the negotiations aforesaid it was understood and agreed between respondent and petitioner that petitioner's line should be included as the connecting line of respondent, to be bound by the contract made, and to participate in the earnings of the pool. (4) The pool for business to the northern and eastern ports contemplated was not formed, it being impossible for the contracting parties to agree upon the details and percentages; but in lieu thereof a pool of the carrying business from the Chattahoochee river to South Atlantic ports only was entered into between respondent and others, which included the railway lines engaged in the carrying trade from the Chattahoochee river to South Atlantic ports, and did not include the petitioner's or any other steam-ship line. (5) That the agreement for pooling the Chattahoochee business to South Atlantic ports was made on the 16th of July, 1886, to take effect August 1, 1886, and a copy thereof was furnished by respondent's traffic agent to petitioner on the 26th day of July, 1886, thereby giving full notice to petitioner that the pool agreed upon only included business of the Chattahoochee river to South Atlantic ports, and did not include any business to northern and eastern ports. (6) The case does not show that the petitioner suffered any specific damages in its business or otherwise because not included in the pool as made. The respondent, in fact, carried no freight under the operation of the pooling contract, and yet collected $14,210.97 as its share in the pool,—$11,085.03 being for cotton carried directly to Savannah for local delivery or foreign export. It is this share so collected by respondent which petitioner insists should be divided with him. Waiving the question whether the petitioner's demand is one to commend itself to a court of equity, it seems clear that petitioner's grievance is that a pool was not made of the business to northern and eastern ports. In a pool of the Chattahoochee business to South Atlantic ports, the petitioner's line was not a competitor, and there was no reason why it should be included when it could render no assistance, nor interpose any hindrance. That petitioner's line, as a probable competing line in case no pool was made, was used as a menace by respondent to force better terms for himself, is probably true, but it constitutes no legal ground for

compelling respondent to share with petitioner the receipts from the pool actually made, which included no steam-ship lines. That petitioner was deceived into believing that its line would be included in any pool entered into by respondent may be true, and still no cause of action could arise in petitioner's favor until specific damages growing out of the deceit should be alleged and proved. In short, petitioner's case, viewed in its most favorable light, is one in which respondent agreed to form a pool of the Chattahoochee river business to northern and eastern ports, and to include petitioner's line in such a railway and steam-ship pool, and then failed and neglected to make such pool, but instead made a pool of Chattahoochee river business to southern Atlantic ports, in which business steam-ship lines could not participate, and which pool did not include petitioner's line. I am satisfied that the conclusion reached by the master in his report and by the court on the hearing was correct. The rehearing asked for is denied, with costs.