Peeltjs, Ch. J.,
delivered the opinion of the court.
The question here arises on the defendants’ demurrer to the amended petition, first, for the want of jurisdiction, and, second, that the facts alleged are not sufficient to constitute a cause of action.
The controlling facts averred are that the claimant, by mesne purchases for a valuable consideration, acquired certain public lands in Louisiana theretofore entered by others and erected thereon sundry improvements and paid taxes thereon. Thereafter while in possession of the lands so purchased and improved he was indicted, tried, and convicted in the United States Circuit Court for the Eastern District of Louisiana for conspiracy to defraud the Government out *143 of public lands in violation of Revised Statutes, section 5440, and was sentenced in one case, known as the “ Scrip case,” to imprisonment for one year in the parish prison of New Orleans and to pay a fine of $3,000; and on the same day in the other case known as the'“ Homestead case ” to imprisonment for one year in the same prison and to pay a fine of $2,500, which judgment on appeal was affirmed by the Court of Appeals for the Fifth Judicial Circuit. Subsequently an application to the Supreme Court of the United States for a writ of certiorari was denied, and the defendant was committed to the parish prison June 20,1907.
Thereafter, on the 5th day of September, 1907, the sentence so imposed was commuted by the President of the United States “to the payment of the fines and costs imposed in each case and a term of imprisonment to expire October 20, 1907, upon condition that he shall have previous^ made full restitution, to the satisfaction of the United States district attorney for the eastern district of Louisiana, in respect to all lands, land titles, or claims to lands.”
On October 16, 1907, the claimant executed releases to the United States to all his “ right, title, and claim in and to ” the lands described in paragraph 2 of the petition and embraced within the terms of the President’s conditional pardon aforesaid, therein “reserving, under the laws of Louisiana, the right to all improvements, or the value thereof, with all taxes heretofore paid, and to proceed against the United States for the same.” (Articles 508 and 2314, Civil Code of Louisiana.)
Under and by virtue of the reservation recited the claimant contends that an express contract thereby arose under the Constitution and laws of the United States to reimburse bim for the money so expended for improvements and for taxes paid on the lands so released.
The United States district attorney, in his capacity as the law officer of the Government (to whom the matter had been committed), was to be satisfied that “ full restitution ” was made by the claimant, and as a means to that end the releases referred to were executed and the lands, as averred, thereby reverted to the public domain subject to entry for homestead purposes under the public-land laws of the United States.
*144 Beyond seeing that “ full restitution ” was made to the satisfaction of the district attorney, i. e., that the title to the lands was by the act of the claimant to be revested in the United States free from any and all encumbrances, the district attorney was not authorized to go, as the claimant was bound to know. Nor was he authorized either by virtue of his office or the direction of the President to do any act which would obligate the United States to reimburse the claimant for money expended in the improvement of the lands or for the taxes paid thereon, whether held by him in good faith or otherwise. No such question was before the President. All that he had in mind in granting the pardon was that the claimant, as a condition thereof, should make “ full restitution ” to the Government. The Government was in no way responsible for the money he had expended on the lands, nor can it be held responsible in damages for the wrongdoing for which the claimant was pardoned.
As a matter of law, the claimant, if he was, as averred, the bona fide holder of the legal title to said lands, could, prior to the execution of the releases referred to, have removed therefrom any building or structure he may have placed thereon, while improvements inseparable from the soil did not inure to the benefit of the United States, as the price of the lands theretofore fixed by law, was pot enhanced. Nor can the claimant look to the United States for reimbursement under the laws of Louisiana, under which laws the reservation was made.
In the case of Jackson v. Ludeling (99 U. S., 513, 525), where a dilapidated railroad had been sold under a mortgage and the purchaser had made improvements thereon, fraud was charged in the purchase and the court was asked to set aside the order of sale, the court, while holding that under the Louisiana laws the purchaser was entitled to reimbursement for improvements made other than for inseparable improvements,«said:
“ There is a series of cases, however, in which it is held by the supreme court of Louisiana that a person without title, going into possession of the public lands of the United *145 States, can not set np a claim for improvements against the Government or its grantees. This was decided in Jenkins v. Gibson (3 La. Ann., 203), in Hollon v. Sapp (4 id., 519), and in Jones v.Wheelis (4 id., 541). In Hollon v. Sapp the court say, expressly, ‘ We are of opinion that this article, of the code is not applicable to materials used and labor expended in making settlements upon the national domain. No right can be acquired' in relation to the public lands except under authority of Congress.’ ”
No contract can be implied under the Constitution or laws of the United States to reimburse the claimant for his improvements on the lands, as there was no taking of private property by authority of law. All that the Government took or claimed was “full restitution” of the lands, and to that the claimant consented by the execution of the releases. That the claimant saw fit to insert in the releases the reservation not contemplated by the President in his conditional pardon or sanctioned by any officer of the Government having authority so to do, can not affect the title to the lands so released. .
By the releases the Government got what was contemplated by the President, i. e., “ full restitution ” of the lands, and beyond that no officer of the Government was, in the absence of statutory authority therefor, authorized to accept such reservation as binding on the Government to reimburse the claimant for the improvements so made.
As “no right can be acquired in relation to the public lands except under authority of Congress,” it follows that the decisions of the supreme court of Louisiana cited and relied upon by the claimant have no application here. These eases have reference to lands, other than public lands, held, possessed, or claimed to be held.by individuals either in good or bad faith, and that as between such individuals the one possessed even in bad faith is entitled to be compensated by the other for improvements made thereon, other than for “improvements inseparable from the soil.” The theory of the laws of Louisiana as expressed in Jackson v. Ludeling (p. 520), is “that no one should be made richer at the expense of another, even though the latter has acted in bad *146 faith.” And referring to the case of Gibson v. Hutchins (12 La. Ann., 545), the court said:
“ But the fact that the title to the land in the case of Gibson v. Hutchins was in the Government when the improvements were made is sufficient, of itself, to place it in a different category from the present. The court, indeed, say: ‘He (the defendant) had no claim against the United States for improvements. He was rather indebted to the United States for the privilege of living so long undisturbed upon the public land.’ ”
The averments of the petition, and pardon made a part thereof, taken as a whole, negative the claimant’s holding in good faith; but whether he did or not, the Government, in the absence of statutory authority therefor, can not be held responsible for improvements made on the public lands of the United States.
For the reasons we have given, the demurrer to the amended petition must be sustained, which is accordingly ordered, and the petition is therefore dismissed.